(156 App. Div. 618.)

## PEOPLE v. HYDE.

(Supreme Court, Appellate Division, First Department. May 16, 1913.)

1. BRIBERY (§ 1*)—OFFENSE—BENEFITS RECEIVED—"BRIBE."

The fact that on the request of accused, a city treasurer, a bank with which accused had deposited city funds acceded to his request that it loan a trust company a sufficient amount to tide it over an investigation by bank officials, under a threat by accused to withdraw the city's funds from such bank on refusal, and to increase the city deposit as much as the bank loaned to the trust company, did not constitute a personal advantage to accused so as to be a bribe within Penal Code, defining bribery; a "bribe" being a gift not necessarily of pecuniary value bestowed for the purpose of influencing the conduct of the receiver, and must be of substantial and not mere imaginary value to him, or merely gratifying a wish or hope.

[Ed. Note.—For other cases, see Bribery, Cent. Dig. §§ 2, 3; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 1, pp. 867, 868; vol. 8, p. 7593.]

2. CRIMINAL LAW (§ 507*)—ACCOMPLICES—BRIBERY.

A person who gives a bribe is an accomplice of the person bribed, and hence his testimony must be corroborated, though both the receiving and giving of the bribe were made separate crimes by statute and by the Constitution.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1082–1096; Dec. Dig. § 507.*]

3. CRIMINAL LAW (§ 59*)—"ACCOMPLICE."

An "accomplice" must be so connected with the crime that he might himself have been convicted as a principal or accessory before the fact, and must have taken part in the perpetration of or preparation for the crime with intent to assist in its commission.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 71, 73, 74, 76–81; Dec. Dig. § 59.*

For other definitions, see Words and Phrases, vol. 1, pp. 75–79; vol. 8, p. 7561.]

4. LARCENY (§ 27*)—ACCOMPLICE.

A receiver of stolen goods is not an accomplice of the thief.

[Ed. Note.—For other cases, see Larceny, Cent. Dig. §§ 55–57; Dec. Dig. § 27.*]

Ingraham, P. J., dissenting; Laughlin, J., dissenting in part.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
141 N.Y.S.—69

Appeal from Criminal Term, New York County.

Charles H. Hyde was convicted of receiving a bribe, and appeals. Reversed, and indictment dismissed.

See, also, 78 Misc. Rep. 480, 139 N. Y. Supp. 1000.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-LIN, CLARKE, and SCOTT, JJ.

John B. Stanchfield, of New York City (Charles H. Tuttle, of New York City, on the brief), for appellant.

John Kirkland Clark, Asst. Dist. Atty., of New York City, for the People.

CLARKE, J. The defendant appeals from a judgment of conviction in the Supreme Court, Criminal Term, of the crime of bribery; the charge being that while holding a public office, to wit, that of chamberlain of the city of New York, he received a bribe to influence his official action.

The defendant on January 3, 1910, became chamberlain of the city of New York, thereby becoming custodian of the funds of the city, with power to determine how and to what extent such funds should be deposited in the several authorized depositories. These depositories, to the number of about 150, are selected by the mayor, comptroller, and chamberlain, sitting as a board. How much money shall be kept on deposit in each depository rests wholly in the discretion of the city chamberlain, subject only to the restriction that no more than 50 per cent. of the amount of its combined capital and surplus may be kept on deposit in any one depository. In each borough there is one receiving depository, designated as such by the city chamberlain, in which deposits are made daily by each officer and department collecting city revenues. The amounts so deposited are notified to the chamberlain, and he distributes the amounts so received among the other depositories, leaving only a portion thereof on permanent deposit in the receiving bank.

Naturally, in view of this wide discretion in the matter of keeping city funds on deposit, the chamberlain is the subject of great interest to those in control of many of the banks and trust companies on the list of authorized depositories.

In the month of February, 1910, the defendant, as chamberlain, designated the Northern Bank of the City of New York as the receiving depository of city funds collected in the borough of the Bronx. The daily deposits made in that bank varied greatly; but, at the time of the transactions charged as constituting a crime, the permanent balance allowed to remain on deposit averaged about $165,000. This bank was controlled by one Joseph C. Robin, who owned a majority of its stock and was a director and chairman of its executive committee.

In March, 1910, the defendant became acquainted with William J. Cummins and Joseph B. Reichman, who were largely interested in and virtually controlled the Carnegie Trust Company, also an authorized city depository, of which Reichman was president. Cummins had recently come to New York from another state and was reputed to be a man of large wealth, interested in many important business

enterprises. Reichman was also reputed to be a man of considerable means. Soon after defendant met Cummins and Reichman, he made large deposits of city funds in the Carnegie Trust Company, so that by the middle of May the deposit amounted to $1,000,000, at which sum it remained until July, 1910, when it was reduced to $800,000 by withdrawals made by the deputy chamberlain while the defendant was in Europe. It remained at this latter figure until and after the occurrences which led to defendant's indictment. On June 9, 1910, the defendant went abroad, remaining until about August 20th. During this time the Carnegie Trust Company was subject to a "run," resulting in large withdrawals of deposits.

In the late afternoon or early evening of August 22, 1910, a conference took place at defendant's private law office between defendant, Cummins, Reichman, and Robin. The condition of affairs then disclosed was substantially as follows: The officers of the Carnegie Trust Company had reason to apprehend, and did apprehend, that on the following day that institution would be visited and its condition scrutinized by the State Bank Examiners. It had been forced to dispose of over $130,000 of city bonds held as a portion of its reserve, thereby depleting its reserve by that amount, and it was feared that, unless this deficiency was made up and the reserve made to appear intact, the Trust Company would be closed by the State Superintendent of Banks. The business relations between Cummins, Reichman, Robin, the Carnegie Trust Company, and the Northern Bank had been quite intimate, and Cummins and Reichman desired Robin, or the Northern Bank which he controlled, to lend the Carnegie Trust Company city bonds, or their equivalent in money, in order to make up the deficit in the reserve.

The indictment is based upon what took place at this conference, as testified to by Robin. He was flatly contradicted by the defendant, and this question of veracity between them was practically the only issue of fact submitted to the jury. In considering this appeal we accept their verdict upon this issue.

In substance, Robin's version of what took place at this interview was that defendant urged upon him (Robin) that the Northern Bank should loan to the Carnegie Trust Company enough money to avoid the apprehended closing of the company by the Superintendent of Banks, and promised that, if this was done, he (Hyde) as city chamberlain would increase the amount of city funds kept on deposit in the Northern Bank by at least as much as that bank loaned to the Trust Company, at the same time threatening that, in case the Northern Bank refused to make the loan, all of the city's money deposited with it would be at once withdrawn. On the faith of this promise and under the compulsion of this threat, Robin so arranged that the loan was made.

After the conviction and sentence of the defendant, the justice who presided at the trial granted a certificate of reasonable doubt and a stay of execution pending an appeal to this court. The questions upon which the justice entertained doubt were, as formulated by him:

"Whether the facts set out in the indictment constitute a crime, and if the defendant has been sufficiently apprised thereof. Whether, under the statute,

the acts of the defendant, as found by the jury, constitute the crime of receiving a bribe. Whether the instruction given to the jury defining the crime of bribery, as applying to the acts of the defendant in evidence, was erroneous."

The indictment contained four counts, but the case was submitted to the jury only on the first and second, which are substantially identical in form, except that in one Joseph C. Robin, and in the other the Northern Bank, is named as the giver of the bribe. The crime charged is stated in the first count substantially as follows: That Hyde asked Robin to cause and procure the Northern Bank to loan to the Carnegie Trust Company the sum of $130,000, it being then and there "to the personal advantage of and a benefit to the said Charles H. Hyde and the said Carnegie Trust Company" that such loan should be made, and the making of said loan being "a valuable favor and service to the said Carnegie Trust Company and the said Charles H. Hyde." Then followed allegations that Hyde promised Robin that, if the latter would cause or procure the said Northern Bank to make the said loan, he, the said Hyde, would cause the daily balance of city funds and moneys kept on deposit in said Northern Bank to be thereafter increased in amount, whereupon the said Robin, pursuant to the said agreement and understanding, did cause and procure the Northern Bank to make a loan of $130,000 to said Carnegie Trust Company, and the said Hyde, in consideration of the making of and pursuant to said agreement and understanding, did thereupon cause the daily balances of city funds and moneys kept on deposit in said Northern Bank to be increased in amount.

An analysis of the indictment shows that the charge is that Robin bribed Hyde to do an official act, to wit, the deposit or agreement to deposit city funds in the Northern Bank, and that the bribe or inducement to do this act was the loan by the Northern Bank to the Carnegie Trust Company of the sum of $130,000, which loan is described in one place as being "to the personal advantage of and a benefit to the said Charles H. Hyde," and in another place as being "a valuable favor and service to the said Charles H. Hyde."

The appellant strenuously argues, as he did at Trial Term, that the indictment is insufficient for lack of specification as to how the loan from the Northern Bank to the Carnegie Trust Company constituted a personal advantage to Hyde. In view of the conclusion at which we have arrived, as hereinafter indicated, we do not find it necessary to pass upon this objection to the indictment itself; for, whatever generality of description may suffice for an indictment, it is clear that, to justify a conviction, the people must show by proof upon the trial, as a matter of fact, that the loan was in fact such an advantage to the appellant. In this the prosecution utterly failed, for the people were able to produce no evidence whatever that the defendant received, or was in a position to receive, any personal advantage from the loan from the Northern Bank to the Carnegie Trust Company, and no question was put to the jury as to whether or not he had received any such personal advantage. It was shown that his relations with Cummins continued close and intimate, and that, some weeks after the conversation with Robin, the defendant had received

an accommodation in the shape of a loan from the Carnegie Trust Company; but this was not connected in any way with the transaction which constituted the basis of the indictment, and the district attorney does not claim that it constituted the bribe or personal advantage referred to in the indictment, as indeed it could not, for the charge in the indictment is that the bribe, whatever it was, proceeded from Robin, not from Cummins or the Carnegie Trust Company.

[1] The people were therefore compelled to fall back upon the proposition, for which they now contend, that the mere fact that Robin, for the Northern Bank, acceded to defendant's request that that bank should make the loan desired by the Carnegie Trust Company, of itself constituted a bribe and was manifestly a personal advantage and thing of value to defendant, and so the court charged as matter of law. It is quite clear that this position is untenable. It is not to be disputed that what is intended to be described by the words used in the Constitution and the sections of the Penal Law defining the crime of bribery in its various phases, and what is commonly known by the collective word "bribe," is something more than the personal satisfaction arising from the gratification of a wish. There must be something more flowing to the person who asks the favor —something of value to him, not necessarily of pecuniary or intrinsic value, but value in the sense of a personal advantage of some sort. The word "advantage" must be given its commonly accepted and natural meaning of something accruing to the benefit of the person receiving it.

The district attorney, as support for his position and for that taken by the trial court, relies upon People ex rel. Dickenson v. Van de Carr, 87 App. Div. 386, 84 N. Y. Supp. 461. That case, however, was very different from this. It came before the court upon a writ of habeas corpus, and the only question to be considered was whether there had been any evidence before the committing magistrate, who had held the relator for the action of the grand jury, tending to show that said relator had been guilty of the crime of offering to accept a bribe. The relator, who was a member of the board of aldermen, had offered to barter his vote in that board for the reinstatement by the street cleaning commissioner of an employé who had been discharged. It was held that a bribe need not be anything of actual value, and that there was a fair inference to be drawn from a letter written by the relator that he expected to derive some personal or political advantage from the reinstatement of the discharged employé. It was therefore considered that enough appeared to warrant holding him for the action of the grand jury.

This fell far short of holding that it would not be necessary to allege in the indictment, or to prove upon the trial, just what advantage would accrue to the relator if his request had been complied with.

To repeat, a "bribe" is a gift or gratuity (not necessarily of pecuniary value) bestowed for the purpose of influencing the action or conduct of the receiver. It must consist of something real, substantial, and of value to the receiver, as distinguished from something imaginary, illusive, or amounting to nothing more than the gratification of a wish or hope on his part. The people wholly failed to prove that

the loan by the Northern Bank to the Carnegie Trust Company was of any personal advantage, benefit, or service, either directly or indirectly, to the defendant; and for this reason there was a failure of proof to justify a conviction; and for this reason the indictment should have been dismissed at the close of the people's case, or a verdict directed in favor of defendant at the close of the whole case.

The judgment appealed from must therefore be reversed, and a new trial ordered.

McLAUGHLIN and SCOTT, JJ., concur.

McLAUGHLIN, J. While I entirely concur in the opinion of Mr. Justice CLARKE, there is one other question raised by an exception to the charge which I think should be considered, because it is one which may frequently arise in other cases. The indictment named Robin (or the Northern Bank, for whom Robin acted) as the briber, and the defendant as the person bribed. There was no evidence of the alleged bribery except that given by Robin, and no corroboration of his testimony on this point.

[2] The court charged distinctly that Robin, the alleged briber, was not an accomplice of Hyde, the person bribed, and consequently that Robin's testimony needed no corroboration to justify a conviction. This ruling is contrary to the unbroken line of authorities in this state.

[3] An "accomplice" has been defined as follows:

"To constitute an accomplice one must be so connected with the crime that at common law he might himself have been convicted either as a principal or as an accessory before the fact. To warrant such a conviction, the one accused must have taken part in the perpetration of or preparation for the crime with intent to assist in the crime." People v. Zucker, 20 App. Div. 363, 46 N. Y. Supp. 766, affirmed on opinion below 154 N. Y. 770, 49 N. E. 1102.

Certainly in a case of bribery the briber takes part in the crime, and is indeed an essential part of it, for unless there be a briber there can be no bribe, although of course there may be a willingness or even an offer to accept a bribe. In such a case the person to whom the offer is made, if he rejects it, is clearly not an accomplice. In this case, however, the defendant was indicted, not for offering to receive a bribe, but for actually receiving one.

In People v. Bissert, 71 App. Div. 118, 76 N. Y. Supp. 630, affirmed on opinion 172 N. Y. 643, 65 N. E. 1120, the precise question was involved. The defendant in that case, a police officer, was indicted for accepting a bribe from one Lena Schmitt, the keeper of a disorderly house. The Schmitt woman testified to giving the bribe, and an attempt was made to corroborate her testimony, but, as the court held, without success. The judgment was reversed for the reason, among others, that the defendant had been convicted upon the uncorroborated evidence of Lena Schmitt, the briber, who was considered to be an accomplice. The court said, speaking of the Schmitt woman:

"If she paid to the defendant this sum, for the purpose specified, she was equally guilty with the defendant because she aided and abetted in the com-

mission of the crime. She was an accomplice, and therefore by the express provisions of the statute (Code Crim. Pro. § 399) the defendant could not be convicted upon her testimony alone."

It is now contended by the district attorney that this case is not authority for what it decides, because, as the record on appeal shows, it was assumed throughout the case by the prosecution as well as the defense that a briber was an accomplice of the person bribed, and the trial court so charged. The force of this objection is not altogether apparent. It presumes that all the courts before which the case came carelessly assumed an erroneous rule of law, and that the appellate courts based a reversal of the judgment upon such assumption. In the prosecution for bribery arising out of the notorious aldermanic scandal with reference to the Broadway railroad franchise, it was universally held that the briber and the bribed were accomplices each to the other, and that their evidence required corroboration to justify a conviction. People v. McQuade, 110 N. Y. 284–307, 18 N. E. 156, 1 L. R. A. 273; People v. O'Neill, 109 N. Y. 251–267, 16 N. E. 68; People v. Kerr (O. & T.) 6 N. Y. Supp. 674. In the latter case, Daniels, J., expressly charged the jury that the recipient of a bribe was an accomplice of the briber, and that his testimony must therefore be corroborated. To the same effect are People v. Winant, 24 Misc. Rep. 361, 53 N. Y. Supp. 695; People v. Acritelli, 57 Misc. Rep. 574, 110 N. Y. Supp. 430; People v. Maynard, 151 App. Div. 790, 137 N. Y. Supp. 19. It was also the rule of the common law, and is to-day the rule in every state, save one, wherein the question has been considered, that a briber and the recipient of the bribe are accomplices. Vide People v. Coffey, 161 Cal. 433, 119 Pac. 901, 39 L. R. A. (N. S.) 704, where the question is discussed at length and the authorities collated. The one apparent exception to the rule is State v. Durnam, 73 Minn. 150, 75 N. W. 1127, in which the court expressly declared that a person giving a bribe was not an accomplice of the person who received it. The question, however, was not involved in the case. The defendant was indicted for asking a bribe, not for receiving one, and the witness who was claimed to have been an accomplice had not agreed to give a bribe, but had refused to do so. Of course, he was in no sense an accomplice in the crime of asking.

It is strenuously urged that the giver of a bribe cannot be deemed an accomplice of the person whom he bribed, because the giving and the receiving of a bribe are made by law distinct, although reciprocal, crimes. This contention loses much of its force when it is considered that the law was precisely the same as it is now in this respect when the aldermanic bribery cases, above cited, were decided. But in the nature of things, one is or is not an accomplice of another, not because he is or is not indictable for the same or another offense, or by reason of the form of the punishment which the statute has prescribed, but by reason of what he has done, and of the part which he has taken in the commission of the crime, and it would seem, under section 2 of the Penal Law (Consol. Laws 1909, c. 40), that notwithstanding the giving and the receiving of a bribe are made distinct crimes, yet the giver may be indicted as a principal in the crime of receiving, and vice versa. People v. Maynard, 151 App. Div. 790, 137 N. Y. Supp. 19.

The subject was discussed at some length by the Supreme Court of Massachusetts in Commonwealth v. Smith, 11 Allen, 243; the question being whether a suborner of perjury was an accessory before the fact of the perjuror. The court said:

"The crime of subornation of perjury is clearly in its nature that of an accessory before the fact to the perjury. Both perjury and subornation are felonies under the statute being punishable by imprisonment in the state prison. Whoever procures a felony to be committed, though it be by the intervention of a third person, is an accessory before the fact, because it is not necessary that there should be any direct communication between the accessory and the principal. And the accessory is a felon, though his felony is different in kind from that of a principal. So it is said to be a principle in law, which can never be controverted, that he who procures a felony to be done is a felon. We cannot see that the application of these principles is, changed when the crime of the accessory before the fact is made by statute a substantive felony. The object of making it a substantive felony may be either to provide a distinct or milder punishment upon conviction, or to authorize the indictment and conviction of the accessory where the principal has not been convicted."

·In People v. Evans, 40 N. Y. 1, it was held that the subornation of perjury may not be proved by the uncorroborated testimony of the person suborned, and in People v. Gilhooley, 108 App. Div. 234, 95 N. Y. Supp. 636, affirmed 187 N. Y. 551, 80 N. E. 1116, it was assumed that the perjurer was the accomplice of the suborner. The district attorney cites to us a number of cases in which, as he claims, a contrary rule has obtained. None of them are cases of bribery, and all of them are clearly distinguishable in principle, except perhaps those which hold that a woman who submits to an abortion is not an accomplice of him who performs the operation. In Dunn v. People, 29 N. Y. 523, 86 Am. Dec. 319, it is said that this apparent exception to the general rule was adopted because "the law regards her rather as the victim than the perpetrator of the crime," and in People v. Vedder, 98 N. Y. 630, the court pointed out the fact that the language of section 294 of the Penal Code seemed to be expressly so framed as to exclude the woman from participation as a principal in the crime of the abortioner, and prescribed a different penalty for her offense, concluding the opinion with the remark:

"We regard the proposition as too well settled by authority, and too salutary in practice, to be now questioned."

In People v. McGonegal, 136 N. Y. 62, 32 N. E. 616, the witness who was claimed to be an accomplice of the abortioner was not the woman upon whom he·operated, but one who had accompanied the victim to the place at which the operation was to be performed. She was not present at the operation, and it was not shown that she had aided in or advised it. It was held that she was not an accomplice of the person who performed the operation, although it was intimated that she might have been held as an accomplice of the woman who submitted herself to be operated upon.

[4] A receiver of stolen goods is held not to be an accomplice of the thief, because he has had no part in the preparation for or commission of the crime, and therefore is neither a principal nor an accessory before the fact, although at common law he might have been

considered an accessory after the fact. So a person who plays cards in a gambling house is not guilty of a crime, and is not an accomplice in the crime of keeping a gambling house. People v. Bright, 203 N. Y. 73, 96 N. E. 362, Ann. Cas. 1913A, 771. In that case the defendant was indicted as a "common gambler." The court held that the underlying idea in the definition of this crime is the habitual participation in gaming as a money making pursuit, and therefore that one who upon a single occasion played cards in the defendant's gaming house could not have been indicted either as a prinicipal or as an accessory before the fact with reference to the particular crime for which the defendant had been indicted. The distinction between this case and that of a briber and one who is bribed is obvious.

I am of the opinion, therefore, both upon principle and authority, that the person who gives a bribe is the accomplice of him who accepts it, and that the charge of the court to the contrary was erroneous.

CLARKE and SCOTT, JJ., concur.

INGRAHAM, P. J. (dissenting). I concur in the reversal of this judgment, as I think there was error that requires us to order a new trial; but I do not concur in much that is said as to the reasons therefor. The charge against the defendant is that he, a public officer, did feloniously ask, receive, and agree to receive of and from one Joseph C. Robin a bribe of certain value and a promise and agreement therefor upon an agreement and understanding that the action and official proceeding of him, the defendant, as such chamberlain, should be influenced thereby, or that the defendant, a public officer and a person executing the functions of a public office, did ask and receive and agree to receive of and from the Northern Bank of New York a bribe of certain value and a promise and agreement therefor upon an agreement and understanding that the action and official proceedings of him, the said Hyde, as such chamberlain, should be influenced thereby.

By the Constitution of the state the people, recognizing the danger to which a democratic form of government is exposed by the bribery of public officers, have themselves defined the crime of a person holding office accepting a bribe and the crime of a person who shall offer or promise a bribe to a public officer making the acts distinct offenses. By section 2 of article 13 of the Constitution it is provided that any person holding office under the laws of this state who shall receive or consent to receive directly or indirectly anything of value or of personal advantage or a promise therefor from performing or omitting to perform any official act or with the express or implied understanding that his official action or omission to act is to be in any degree influenced thereby shall be deemed guilty of a felony. The crime here defined is that of a person holding office under the laws of this state who receives or attempts to receive, directly or indirectly, anything of value or of personal advantage to influence his official action, and that crime is designated as "official bribery and

corruption." If the officer receives anything of value or of personal advantage or the promise thereof with the express or implied understanding that his official action or omission to act is to be in any degree influenced thereby, he commits the crime. No one can commit this crime except a person holding office under the laws of this state; but every one holding such an office is subject to its provisions. The bribe is not confined to the receipt of a thing of value, but of a personal advantage.

To enforce this constitutional provision we have: Section 372 of the Penal Law, which provides in substance that a person who executed any of the functions of a public office who "asks, receives, or agrees to receive a bribe or any money, property, or value of any kind, or any promise or agreement therefor, upon any agreement or understanding that his vote, opinion, judgment, action, decision or other official proceeding, shall be influenced thereby, or that he will do or omit any act or proceeding, or in any way neglect or violate any official duty, is punishable by imprisonment for not more than ten years"; section 1823 of the Penal Law, which provides that an executive officer or a person elected or appointed to an executive office who asks, receives, or agrees to receive any bribe, upon an agreement or understanding that his vote, opinion, or action upon any matter that is pending, or which may by law be brought before him in his official capacity, shall be influenced thereby, is punishable by imprisonment in state's prison not exceeding ten years; and section 1826 of the Penal Law, which provides that a public officer, or any person appointed or employed by or in the office of a public officer, who asks or receives or consents or agrees to receive any emolument, gratuity, or reward, or any promise of emolument, gratuity, or reward, or any money, property, or thing of value or of personal advantage, except such as may be authorized by law, for doing or omitting to do any official act, or for performing or omitting to perform, or for having performed or omitted to perform, any act whatsoever, directly or indirectly relates to any matter in respect to which any duty or discretion is by or in pursuance of law imposed on or vested in him or may be exercised by him by virtue of his office or appointment or employment or his actual relation to the matter shall be guilty of a felony. Section 1837 of the Penal Law provides that the provisions which relate exclusively to executive officers apply to administrative officers in the same manner as if executive and administrative officers were both mentioned.

These are all provisions providing for the punishment of the felony created by section 2 of article 13 of the Constitution. Taking these provisions together, it is sufficient if, in the language of the Constitution and these statutes, it is alleged that a public officer did receive a thing of value or of personal advantage, or the promise thereof, for performing or omitting to perform any official act, or with the express or implied understanding that his official action or omission to act is to be influenced thereby. It is the act of receiving, upon a promise or agreement to influence his official act, a thing of value or of personal advantage, that is made a crime, and that crime is a dis-

tinct and separate crime from that of one who gives or offers to give a thing of value or of personal advantage to the official.

I think the evidence would sustain a finding that the defendant was guilty of a violation of this section of the Constitution and the sections of the Penal Law. There was evidence of a payment to the Carnegie Trust Company which was a personal advantage to the defendant, and that to obtain that personal advantage he agreed to deposit with the Northern Bank the money of the city under his control. Here we have all the elements of the crime: Payment by the Northern Bank to the Carnegie Trust Company for the benefit and personal advantage of the defendant, and the promise of the defendant that his official action relating to the deposit of the city money should be exercised in favor of the Northern Bank, which paid or advanced to the Carnegie Trust Company the sum of money.

I also dissent from the conclusion that Robin, the principal witness for the prosecution, was an accomplice in the commission of this crime. As before stated, this crime of accepting or receiving a bribe is created by the provision of the Constitution to which attention has been called. It is confined to accepting a thing of value or of personal advantage to the public officer. The person that gives the bribe has no connection with the guilt of the public officer who receives a bribe to influence his official act. The Constitution in express terms creates another crime, which is designated as the crime of offering or promising a bribe, and that is created by section 3 of article 13 of the Constitution. It is there provided that any person who shall offer or promise a bribe to an officer, if it shall be received, shall be deemed guilty of a felony and liable to punishment therefor. And by section 378 of the Penal Law that offense, as an entirely distinct offense, is defined and punishment provided therefor.

If the person offering the bribe was an accomplice with the person accepting the bribe, then these careful provisions of the Constitution and the Penal Law defining the separate crimes would be entirely unnecessary, for the person offering or giving the bribe could have been indicted as a principal under section 2 of the Penal Law. There, a "principal" is defined to be a person concerned in the commission of a crime, whether he directly commits the act constituting the offense or aids and abets in its commission; and a person who directly or indirectly counsels, commands, induces, or procures another to commit a crime is a principal. But Robin, in this case, neither abetted in the commission of the crime, nor counseled, commanded, induced, or procured the defendant to commit it. If Robin's testimony is true, and the jury has accepted it, this bribe or the payment of money from the Northern Bank was extorted from him by threats of a serious injury to the bank of which he was an officer, and a promise of advantage to the bank if he would accede to the demand of the defendant. He was not more of an accomplice, as I view this testimony, than a person is an accomplice who is met by a robber and parts with his property at the point of a pistol. It was the defendant that extorted, not from Robin, but from the Northern Bank, the payment of a sum of money, with the promise to Robin that the Northern Bank should

receive the deposit of city money; and certainly upon this testimony Robin could not have been convicted as a principal of the charge that Hyde received a thing of value or of personal advantage to influence his official action. It was not Robin's money that was paid to the Trust Company; it was the money of the Northern Bank. Robin's influence to procure the Northern Bank to pay the money was compelled by threats or promise of reward to the bank; but he certainly did not occupy, as I look at it, the position of an accomplice, and I think the court was entirely right in charging that he was not an accomplice, and that it was not necessary for a conviction that he should be corroborated.

I think, therefore, there was evidence to justify the jury in finding the defendant guilty, and I do not think that Robin was an accomplice.

LAUGHLIN, J. (dissenting in part). I concur in the views expressed by Presiding Justice INGRAHAM with respect to the construction and effect of the constitutional and statutory provisions relating to bribery, but not with respect to the evidence adduced against the defendant. I am unable to agree with the views expressed by Mr. Justice CLARKE concerning the decision of this court in People v. Van de Carr, 87 App. Div. 386, 84 N. Y. Supp. 461, which, I think, under the guise of distinguishing that case, unduly limit, if they do not materially modify, it. The opinion in that case, unanimously expressed, gave a construction to the statutes against bribery which render them ·effective, as the public interests imperatively require they should be. I also agree with the Presiding Justice·that the court did not err in charging that Robin was not an accomplice, and I concur in the views expressed by him on the law relating to accomplices in the commission of the crime of bribery. I deem·it ·quite clear on the facts now before the court that Robin was not an accomplice, for he did not induce, or attempt to induce, the defendant to deposit further city funds with the Northern Bank, in which he owned a controlling interest, and of which he was a director and chairman of the executive committee, or induce or attempt to induce the defendant to do anything. · The action taken by him in causing the Northern Bank to loan the Carnegie Trust Company $130,000, on the view of the evidence most favorable to the people, was coerced by a threat on the part of the defendant to withdraw the city's funds then on deposit with the Northern Bank. Robin made no application for the deposit of further ·city funds in his bank. If a crime was committed, Robin was the *victim*, rather than the perpetrator, of it, which brings him within the rules declared and applied in Dunn v. People, 29 N. Y. 523, 86 Am. Dec. 319, in which it was held that a female, who submits to an operation for abortion, is not an accomplice with the person who performs the operation, for the reason that she is the victim rather than the perpetrator of the crime.

I agree fully with the views expressed by Mr. Justice CLARKE concerning the insufficiency of the evidence to show that the defendant was guilty of the crime with which he was charged. The defendant, as city chamberlain, had on deposit with the Carnegie Trust Company at the time upwards of $650,000. According to the testimony

of Robin, upon which the conviction is based, the defendant was reliably informed that the Carnegie Trust Company required $130,000 to make good the reserve fund which it was required to have on hand, and that, unless its reserve was made good, it was likely to be closed by the Superintendent of Banks the following day. This would have endangered the city's funds on deposit with the Carnegie Trust Company, and perhaps its funds to the extent of about $30,000,000 on deposit with other banks, which it was the duty of the defendant to protect. He had a perfect right to withdraw funds from the Northern Bank and deposit them with the Carnegie Trust Company for the protection of the city's deposits with that company, and it was his duty to do so if he deemed it a proper course to pursue. Instead of doing this, it was entirely proper for him to request, as it is claimed he did, that the Northern Bank make the loan to the Carnegie Trust Company, and to assure that bank that he would maintain, or even increase, the amount of the city's funds on deposit with it, and, as an inducement to that end, to inform the Northern Bank that if it did not do so he would withdraw the municipal funds. This is what Robin says the defendant induced the Northern Bank to do. The transaction, therefore, was one which could have been lawfully had. But it is claimed that the acts of the defendant, which would have been lawful if actuated by a desire to protect the city's funds, became criminal because in the interview with Robin he manifested a desire to have this done as a favor to Cummins and other friends of his connected with the Carnegie Trust Company, and did not put the request on the ground that he desired to protect the city. He did not, however, say that he was not actuated in making the request by a desire to protect the city, or that he would not have made it but for the fact that Cummins and others connected with the Carnegie Trust Company were his friends. The *act* which he requested Robin to do being a lawful one, I am of opinion that it should not be deemed felonious merely because he assigned improper motives therefor. Moreover, if in one view of the evidence the act would be the performance of official duty and innocent, and in another criminal, the presumption of innocence and the reasonable doubt to which the defendant is entitled require that the innocent construction be placed upon his acts. I am of opinion that the evidence is insufficient to sustain the conviction which may be accounted for by the defendant's unsuccessful effort to prove that he was not in his office at the time when Robin claims to have had the interview with him.

I agree, therefore, with Mr. Justice CLARKE that the learned court erred in denying the motion duly made in behalf of the defendant for a direction of a verdict of acquittal; and, since the record indicates that the people have exhausted their proof and it is not claimed that they have further evidence, I vote for a reversal of the conviction and the discharge of the defendant, and the exoneration of his bail.