39 N.J. Super. 187 (1956)
120 A.2d 621
STATE OF NEW JERSEY
v.
EDWARD R. SMAGULA, CASIMIR IWANICKI, WILLIAM STACHULA, EMIL MIZDOL, ROMAN P. WICHERSKI AND FRANK MONKOWSKI, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 23, 1956.
Decided February 20, 1956.
*189 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Morris Malech argued the cause for the State (Mr. Guy W. Calissi, Bergen County Prosecutor; Mr. William C. Brudnick on the brief).
Mr. James A. Major argued the cause for defendants-appellants.
The opinion of the court was delivered by CLAPP, S.J.A.D.
The defendants, six members of the Board of Education of the Borough of Wallington, were convicted of bribery under the following statute, N.J.S. 2A:93-4:
"Any member or officer of any state, county or municipal government, or member of any public authority, board, association, commission or committee, who solicits or receives, directly or indirectly, any money or valuable thing, reward or commission for his vote as a member thereof, is guilty of a misdemeanor."
Cf. State v. Merkle, 82 N.J.L. 172 (Sup. Ct. 1912), reversed 83 N.J.L. 677 (E. & A. 1912). As to the common law of bribery, see State v. Ellis, 33 N.J.L. 102 (Sup. Ct. 1868). The six defendants appeal.
The State's case tended to show these circumstances. On August 2, 1954 the board of education accepted the resignation of the principal of Wallington High School. On August 4, 1954, by pre-arrangement, five of the defendants met Bernard E. Piela, principal of Public School No. 1 in Wallington, driving him to a tavern. There, after some social conversation, one of them, Smagula, said:
*190 "Well let's get down to business. We are here to talk about the high school principalship * * * If you want the job it will cost you $3,000."
Piela asked "What for?" He was told "campaign money"; or (as he later testified) the money was needed, not for Smagula or the group, but for campaign money. Piela replied that he'd give them his answer the next day. His answer the next day was a refusal. The sixth defendant came to Piela some nine days later, aiding and abetting the others. He had this to say:
"This is your last opportunity, and if you want the job it will cost you $2,000."
He, too, declared the money was needed for campaign purposes, though he also stated that he and another defendant wanted no part of the money. Piela again refused; and subsequently another man was given the appointment.
The principal point on the appeal is presented by that portion of the court's charge to the jury in which the court said, after referring to the talk around the table at the tavern:
"There is further evidence of the conversation around the table that the money was to be for campaign funds. Regardless of how they labelled the money or reward that is sufficient evidence from which the jury could find these five defendant Board of Education members directly or indirectly solicited money or reward from Piela for their official votes * * *."
We pass over the fact that the objections to the charge were not made until after the jury had retired. R.R. 4:52-1; J.B. Wolfe, Inc. v. Salkind, 3 N.J. 312, 317 (1949); cf. Jelinek v. Sotak, 9 N.J. 19, 25 (1952). This matter has not been referred to by the parties.
The defendants' first point is that the solicitation of money by a public official violates the statute only if the money is to go to the official himself. They contend that any solicitation of money made by them for campaign funds, in return for their votes as members of the board of education, is not an offense under the statute.
*191 We disagree. The statutory words are "any money or valuable thing, reward or commission." "Reward," an intermediate term in this phrase, can perhaps be said to allude to something which is to go to the solicitor's personal benefit; but certainly the words, "money" and "valuable thing," standing by themselves, are free of that suggestion. We do not think the term, reward, can be said to dominate or color the whole phrase. According to the letter of the statute, the solicitor is guilty who barters his vote for money. Why should we say otherwise? It must not be forgotten that the aim of the statute is to punish those who betray public office. In our opinion the gist of the offense charged here was the solicitation of money by defendants bargaining for their votes with a corrupt mind; and it mattered not whether the money was to go to them personally or for campaign funds or to some recipient designated by them. As has been said in cases where money has been handed a public official for campaign purposes as a price for his official action, it makes no difference to what use the money is to be put; it still is bribery. In re Crum, 55 N.D. 876, 215 N.W. 682, 55 A.L.R. 220 (Sup. Ct. 1927); State v. London, 194 Wash. 458, 78 P.2d 548, 551, 554, 115 A.L.R. 1255 (Sup. Ct. 1938); cf. State v. Douglas, 70 S.D. 203, 16 N.W.2d 489, 496-498 (Sup. Ct. 1944); 18 U.S.C.A. § 215. In general, cf. Scott v. State, 107 Ohio St. 475, 141 N.E. 19, 23 (Sup. Ct. 1923); 8 Am. Jur. 889, abstracting that case.
The decisions in New York and Massachusetts are not dispositive of our question. People ex rel. Dickinson v. Van De Carr, 87 App. Div. 386, 84 N.Y.S. 461, 463, 464 (App. Div. 1903) and People v. Hyde, 156 App. Div. 618, 141 N.Y.S. 1089, 1093 (App. Div. 1913), construing the words "bribe, or any money, property or value of any kind or any promise or agreement therefor" in a New York bribery statute, held that these words have reference, among other things, to a political or other personal advantage of some sort, but not to the mere gratification of a wish. However, these cases did not have to deal with the word "money" in *192 the statute; the persons accused there were not charged with having solicited money for campaign purposes or otherwise. In Commonwealth v. Albert, 310 Mass. 811, 40 N.E.2d 21, 26, 27 (Sup. Jud. Ct. 1942), it was held that a Massachusetts bribery statute was violated where a personal advantage accrues to the official, but not where a mere favor is conferred upon another. However this case turned upon a Massachusetts statute whose terms differ noticeably from ours; it imposes a penalty upon a municipal official if, inter alia, he "corruptly requests * * * a gift or gratuity or a promise to make a gift or to do an act beneficial to him." (Italics inserted.)
We are firmly of the view that an offer by defendants to sell their votes for campaign money violates the statute.
We have decided to rest our decision squarely on this proposition, even though we rather think the court's instruction here could be sustained quite apart therefrom. Assume, if you will, the soundness of defendants' contention, namely, that a solicitation is not criminal, at least unless it were made for the purpose of securing some political or other personal advantage for the solicitor. Are the trial judge's instructions at variance with this? Preliminarily it will be observed that he, in the portion of the charge under attack, was in the course of commenting on the evidence (he amply cautioned the jury that the sole responsibility for the determination of the facts rested with them); more particularly, he was bringing to the jury's mind the little scene at the tavern which had been testified to. It seems rather fanciful to suppose that the jury, contemplating this business at the tavern, would have understood the judge's comments as referring (inter alia) to campaign money to be devoted exclusively to the political advantages of others  an eleemosynary civic project. For the jury to have put this construction upon his comments would have been to ignore realities which are too obvious. The question which he left to the jury to answer, and which he repeated for emphasis again and again, was this: did the defendants solicit "money or reward" (italics inserted) for their official votes? Such *193 comments, as the judge made on the evidence, could hardly be said to have drawn the jury away from that question. Hence, even if we should assume (as above stated, we hold otherwise) that the statute by implication has reference only to "money" or "reward" which is to go at least in part to a political or other personal advantage of the solicitor, nevertheless the court's question using the statutory words, must have conveyed to the jury the same implications.
There is no substance at all to the other points made by defendants. One point is that the issue above stated was also raised by the court's denial of defendants' motion for acquittal at the close of the State's case. We have no question but that the evidence theretofore adduced was sufficient to take the case to the jury.
Another point has to do with certain comments on the evidence made in the court's charge, starting off with the words "there is evidence, if you find it credible" (italics inserted), etc. The court in preceding and subsequent paragraphs of the charge fully stated (as we have already indicated) that it was the jury's function to determine the facts; furthermore it discussed at some length the requirement of the law that the State must prove its case beyond a reasonable doubt. To say that the court by using the words "if you find it credible," nullified all that was subsequently said as to proof beyond a reasonable doubt, is to neglect the context surrounding these words.
The other points raised have to do with the testimony. Assuming the commission of error, it nevertheless does not appear from the entire record that the defendants suffered manifest injury or were prejudiced in maintaining their defense upon the merits. R.R. 1:5-1; State v. Witte, 13 N.J. 598, 612 (1953); State v. Orecchio, 16 N.J. 125, 129 (1954).
Affirmed.