Aaron F. Goldstein, J.
This is a motion by the defendants for an order to suppress certain evidence obtained as a result of a search and seizure. The court records reflect the following : The defendants were indicted on April 3,1964, by a Nassau County Grand Jury for burglary, third degree, and grand larceny, first degree, it being charged that on February 16,1964, the defendants did burglarize the dwelling house of Marie Rushmore at Westbury, in the County of Nassau, stealing personal property belonging to Marie Rushmore of a value in excess of $500.
The three defendants were arraigned, entered a plea of not guilty, and thereafter made this motion to suppress, as a result of which a hearing was held before me on July 13,1964.
At the hearing, it developed that Ronald Le Maire had rented apartment 7C at 442 E. 57th Street, in the City of New York, *115 which he thereafter permitted his cohorts, Jacques Messier and Antonio Facchino, to occupy with their friends, Jacqueline Bougie and Monique Carrear.
It also appears without dispute that all three defendants and the two girls are from Montreal, and the three defendants have long criminal records in Canada. More particularly, Messier and Facchino in the early part of 1964, escaped from the New Court House at Montreal where they were being held for robbery. It further appears that Messier and Facchino have boasted that they would not be taken easily, and were reported to have an arsenal of guns in their possession including a submachine gun with three loaded magazines and one automatic rifle.
Messier and Facchino were wanted by the Canadian authorities for escape and Jacqueline Bougie and Monique Carrear for aiding Messier and Facchino as well as harboring them.
These are the facts as I find them when Messier and Facchino were summarily arrested on 57th Street, a short distance from the entrance to the premises, following which Jacqueline Bougie and Monique Carrear were summarily arrested in apartment 7C on the 7th floor of the apartment house situated at 442 E. 57th Street.
Messier and Facchino contend the search of the apartment under the circumstances was unlawful and the resulting stolen property recovered by the police in an amount in excess of $500 was unconstitutionally seized, and should be suppressed and not used in evidence against them. (U. S. Const., 4th and 14th Amdts.; N. Y. Const., art. I, § 12; Mapp v. Ohio, 367 U. S. 643 [1961].)
Defendants’ motion must be and should be in all respects denied (cf. People v. Coffey, 12 N Y 2d 443; People v. Santiago, 13 N Y 2d 326). This court is of the opinion that the police officers had reasonable and probable cause to effectuate the arrest of the defendants and their women companions.
The classic statement of the meaning of probable or reason-' able cause is that of Chief Justice Marshall, in Locke v. United States (7 Cranch [11 U. S.] 339, 348): “ It may be added that the term ‘ probable cause,’ according to its usual acceptation, means less than evidence which would justify condemnation * * * It imports a seizure made under circumstances which warrant suspicion.” (See, also, Henry v. United States, 361 U. S. 98, 102; Brinegar v. United States, 338 U. S. 160; People v. Lane, 10 N Y 2d 347, 353.)
In Brinegar v. United States (supra, p. 175) the court said: ‘“The substance of all the definitions’ of probable cause ‘is a reasonable ground for belief of guilt ’ * * * And fhia *116 ‘ means less than evidence which would justify condemnation ’ or conviction * * * In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. ’ ’ Stated more recently: ‘ ‘ the existence of probable cause must rest upon facts and circumstances amounting to ‘ more than suspicion or possibility, even though not certainty or proof ’ ”. (People v. Beshany, 43 Misc 2d 521, 528.)
In determining whether there is probable cause to believe a person has committed a felony, the police officer may take into account the character and reputation of the person and the information relayed to him by other law enforcement agencies. (People v. Lauricella, 32 Misc 2d 344.) The reasonableness of a search is to be determined by an analysis of the facts and circumstances of the ease, “ the total atmosphere of the case.” (United States v. Rabinowitz, 339 U. S. 56, 66.)
Unquestionably the arrest of Messier and Facchino was perfectly proper because Detective Quill had probable cause and reasonable grounds to believe that both Messier and Facchino were wanted by the Montreal authorities for the crime of escape. The source of Detective Quill’s belief was a communication from Inspector Pateneude of the Montreal Provincial Police. In addition, however, Detective Quill and his companion police officers maintained a 24-hour stake-out on the apartment and verified the presence of not only Messier and Facchino but Jacqueline Bougie and Monique Carrear as well.
Furthermore, additional confirmation was had when Detective Quill received photos of the suspects as well as the wanted circulars sent to him by Inspector Patenaude.
Clearly, then, Detective Quill had not only the right but a legal duty (Penal Law, § 1841; People v. Porter, 115 Misc. 301) to arrest the four suspects as fugitives. It is also certain beyond cavil that the four suspects might have been lawfully arrested while together in the apartment. Also certain is the authority of the police in such case to have broken into the apartment to effect the apprehension. (Ker v. California, 374 U. S. 23, 39-41.)
In People v. Colvert (33 Misc 2d 714, 717-718), Judge Scileppi said: “The Supreme Court of the United States has held that the Fourth Amendment to the Constitution protects the People against unreasonable searches, and that a reasonable search incident to a valid arrest may be made without a search warrant. (United States v. Rabinowitz, 339 U. S. 56, 64, 64-66.) In that case the court said: ‘ Assuming that the officers had time to procure a search warrant, were they bound to do so? We *117 think not, because the search was otherwise reasonable, as previously concluded. * * * A rule of thumb requiring that a search warrant always be procured whenever practicable may be appealing from the vantage point of easy administration. But we cannot agree that this requirement should be crystallized into a sine qua non to the reasonableness of a search. It is fallacious to judge events retrospectively and thus to determine, considering the time element alone, that there was time to procure a search warrant. "Whether there was time may well be dependent upon considerations other than the ticking off of minutes, or hours. The judgment of the officers as to when to close the trap on a criminal committing a crime in their presence or who they have reasonable cause to believe is committing a felony is not determined solely upon whether there was time to procure a search warrant. Some flexibility will be accorded law officers engaged in daily battle with criminals for whose restraint criminal laws are essential.”
In this case, the arrest of the defendants on the street was valid. Furthermore, the police officers had statutory authority to effect a valid arrest of the females at the apartment. (Code Crim. Pro., § 177.) To say that the police should have procured a search warrant prior to the arrest would probably have frustrated the “ vital interests of society in preserving the legitimate and proper function of honest and purposeful police investigation.” (Escobedo v. Illinois, 378 U. S. 478, 494 [dissenting opinion of Justice Stewart, June 22, 1964].)
Under the circumstances of this case, therefore, it was irrelevant that Messier and Facchino were arrested on the street and the girls in the apartment (cf. United States v. Rabinowitz, 339 U. S. 56, supra; United States v. Lefkowitz, 285 U. S. 452). This is not a case of exploration (United States v. Rabinowitz, supra) or subterfuge (United States v. Lefkowitz, supra). It was Detective Quill’s judgment that the safety of all concerned would best be served if the arrest be made in this fashion. Who can quarrel with this determination? Society should commend this wise police action rather than to permit legal architects and technicians to condemn it.
The uncontradicted evidence is that Messier and Facchino had long criminal records in Canada; they were deemed to be highly dangerous and reputed to be heavily armed, and all of this turned out to be true.
We should be ever mindful of the realities of the situation confronting the police when called upon to arrest Canadian gunmen holed up in the City of New York.
*118 If we hope to preserve the liberty and freedom we all cherish, we cannot do so by adopting a suicide standard for the police in cases of extreme danger.
For the reason that Messier and Facchino were lawfully arrested as were Jacquelina Bougie and Monique Carrear, the search of the apartment for the guns was clearly correct and the seizure of the stolen Rushmore property was lawful (cf. Abel v. United States, 362 U. S, 217),
The motion is in all respects denied.