## THE STATE v. ELLIS.

1. Any attempt to influence an officer in his official conduct, whether in the executive, legislative, or judicial department of the government, by the offer of a reward or pecuniary compensation, is indictable.
2. The offence is complete when an offer is made, although in a matter not within the jurisdiction of the officer.

On motion to quash indictment.

An indictment for bribery was found against the defendant in the Quarter Sessions of Hudson county, charging him with having wickedly and corruptly offered the sum of fifty dollars to a member of the common council of Hudson City, to vote for a certain application to lay a railroad track along one of the public streets of said city.

The case having been removed into this court by *certiorari*, the defendant moved to quash the indictment, on the ground that it set forth no crime.

The motion was argued before Justices BEDLE, DALRIMPLE, and DEPUE.

*I. W. Scudder*, and *J. F. Randolph*, for the defendant, insisted—

1. That the crime of bribery could only be predicated of a reward given to a judge or other official, concerned in the administration of justice.

2. That the common council had no jurisdiction to grant the application for which the vote was sought to be procured.

*Robeson, Attorney-General*, for the state, *contra*.

The opinion of the court was delivered by

DALRIMPLE, J.  The indictment in this case was removed into this court by *certiorari* to the Sessions of Hudson.  It sets forth in substance, in language sufficiently plain and intelligible, that application having been duly made to the common council of Jersey City for leave to lay a railroad track along one of the public streets of that city, the defendant wickedly and corruptly offered to one of the members of said common council the sum of fifty dollars to vote in favor of said application.  Upon return of the *certiorari*, a motion was made to quash the indictment, on the ground that the facts set forth do not constitute a crime.

It is said that the common law offence of bribery can only be predicated of a reward given to a judge or other official concerned in the administration of justice.  The earlier text writers thus define the offence : " Where any man in judicial place takes any fee or pension, robe or livery, gift, reward or brocage, of any person, that hath to do before him in any way, for doing his office, or by color of his office, but of the king only, unless it be meat and drink, and that of small value."  3 *Inst.* 145.  The definition in 4 *Blackstone's Com.* 139, is to the same effect.  Hawkins, in his *Pleas of the Crown, Vol.* 1, *p.* 312, gives, substantially, the same description of the offence, but adds : " Also, bribery signifies the taking or giving of a reward for offices of a public nature."  The later commentators, supported, as I think, by the adjudged cases, however, maintain the broader doctrine, that

any attempt to influence an officer in his official conduct, whether in the executive, legislative, or judicial department of the government, by the offer of a reward or pecuniary consideration, is an indictable common law misdemeanor. 3 *Greenleaf's Ev.*, § 71 ; *Bishop on Criminal Law, Vol.* 1, § 95, *and notes ;* 1 *Russell on Crimes* 156. The case of *Rex* v. *Vaughan,* 4 *Burr.* 2494, arose upon motion for an information for a misdemeanor against the defendant, for offering money to the Duke of Grafton, First Lord of the Treasury, to procure the defendant's appointment by the Crown to an office. Lord Mansfield, in his opinion in that case says : " If these transactions are believed to be frequent, it is time to put a stop to them. A minister, trusted by the King to recommend fit persons to offices, would betray that trust, and disappoint that confidence, if he should secretly take a bribe for that recommendation." The motion was granted. In the case of *Rex* v. *Plympton,* 2 *Lord Raymond* 1377, the court held that it was an offence to bribe persons to vote at elections of members of a corporation. Many other cases might be cited in support of the general proposition laid down by the later text writers above referred to. The cases will, however, all be found collated in 2*d Bishop's Criminal Law, in the notes to* §§ 76 *and* 77. Indeed, the authorities seem to be all one way. Neither upon principle nor authority can the crime of bribery be confined to acts done to corrupt officers concerned in the administration of justice. If in the case now before us, it was no crime for the defendant to offer, it would have been no crime for the councilman to accept the bribe. The result would, therefore, be that votes of members of council on all questions coming before them, could be bought and sold like merchandise in the market. The law is otherwise. The common law offence of bribery is indictable and punishable in this state. Our statutes against bribery merely define and fix the punishment for the offence, in cases of bribery of judicial officers and members of the legislature ; they do not repeal or abrogate, or otherwise alter the common law.

It is contended, in the next place, that the facts set forth in the indictment constitute no offence, inasmuch as the common council had not jurisdiction to grant the application for which the vote was sought to be bought. In my opinion, it is entirely immaterial whether council had or had not jurisdiction over the subject matter of the application. If the application was, in point of fact, made, an attempt to procure votes for it by bribery was criminal. The offence is complete when an offer of reward is made to influence the vote or action of the official. It need not be averred, that the vote, if procured, would have produced the desired result, nor that the official, or the body of which he was a member, had authority by law to do the thing sought to be accomplished. Suppose an application made to a justice of the peace, in the court for the trial of small causes, for a summons in case of replevin, for slander, assault and battery, or trespass, wherein title to lands is involved: over these actions a justice of the peace has no jurisdiction, and any judgment he might render therein, would be *coram non judice* and void; yet, I think, it can hardly be contended, that a justice thus applied to may be offered, and with impunity accept a reward, to issue a summons in any case without his jurisdiction. If the common council of Jersey City had not authority to grant the application referred to, the act of the defendant in endeavoring to procure the grant asked for was only the more criminal, because he sought, by the corrupt use of money, to purchase from council an easement which they had no authority to grant. He thereby endeavored to induce them to step beyond the line of their duty, and usurp authority not committed to them. The gist of the offence is said to be the tendency of the bribe to pervert justice in any of the governmental departments, executive, legislative, or judicial. 2 *Bishop's Criminal Law,* § 96. Would it not be a plain perversion of justice, to buy the votes of councilmen in favor of a surrender of the streets of the city, for the purposes of a railroad, when such surrender is unauthorized by law? The rights of the citizens of the munici-

pality thus corruptly tampered with and bargained away, might be regained after a long and expensive litigation, or in some other mode ; nevertheless, bribery and corruption would have done, to some extent at least, their work, and the due course of justice have been disturbed. But I am not prepared to assent, as at present advised, to the proposition that the common council could not properly entertain the application. They were asked by a chartered railroad company of this state, having its terminus in Jersey City, to consent that a railroad track might be laid along one of the public streets of that city. It is not pretended that any legislative authority to lay such track had been obtained. The railroad company could not, under these circumstances, lawfully appropriate to its use one of the public streets of the city without the consent of the city, which has full control over all public streets within the city limits. *Laws of* 1851, *p.* 406, § 6.

Whether or not the common council has the power, with or without legislative sanction, to grant the use of a public street to a railroad company for the uses of the railroad, it is, I think, clear that no such use can be made of the streets, without the consent of the city, in the absence of a legislative grant to that effect.

Nor is it material whether the railroad company which applied for the privilege, had the power under its charter to lay the track. Application had been duly made for that purpose, and was pending. An attempt to bribe a member of council to vote upon it, whether such attempt was made after or before the introduction of an ordinance or resolution granting the privilege asked, comes within the general law against bribery. Whether the common council had authority to make the grant, or the railroad company the power to avail itself of its benefits, if made, or whether the offer of a bribe was before or after the application in due course of proceeding, had been embodied in an ordinance or resolution is immaterial. The offer of anything of value in corrupt payment or reward for any official act, legislative, ex-

ecutive, or judicial, to be done, is an indictable offence at the common law.

The objections taken are not tenable, and the motion to quash must be denied.

Motion denied.