127 N.J. Super. 370 (1974)
317 A.2d 414
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PAUL J. SHERWIN, WILLIAM C. LOUGHRAN AND MICHAEL J. MANZO, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 7, 1973.
Decided March 13, 1974.
*374 Before Judges KOLOVSKY, FRITZ and CRANE.
Messrs. Adrian M. Foley, Jr. and Peter D. Manahan argued the cause for appellant Sherwin (Messrs. Hughes, McElroy, Connell, Foley & Geiser, attorneys; Mr. Peter D. Manahan, on the brief).
Mr. Frederic C. Ritger, Jr. argued the cause for appellant Loughran.
Mr. Paul J. Feldman argued the cause for appellant Manzo (Mr. Charles Frankel, attorney).
Messrs. Richard A. Levin and Stephen N. Dermer argued the cause for respondent (Messrs. Matthew P. Boylan, Stephen N. Dermer and Richard A. Levin, Special Deputy Attorneys General of the State of New Jersey, attorneys; Messrs. Richard A. Levin, Matthew P. Boylan and Stephen N. Dermer, on the brief).
*375 The opinion of the court was delivered by CRANE, J.A.D.
At the time of the occurrence of the events involved in this appeal, defendant Paul C. Sherwin was Secretary of State of New Jersey; defendant William C. Loughran was a solicitor of funds for the Republican Party, and the third defendant, Michael J. Manzo, headed a construction firm known as Manzo Contracting Co., Inc. Indictment No. SGJ9-72-11 of the statewide grand jury charged defendants with the following offenses: count I alleged that all three defendants conspired "to pervert and obstruct the due administration of the laws, that is, Title 27 of the New Jersey Statutes and the rules, regulations, and procedures of the Department of Transportation," in violation of N.J.S.A. 2A:98-1(h) and N.J.S.A. 2A:98-2. Count II charged that all defendants did corruptly counsel, invite and solicit John C. Kohl, Commissioner of Transportation of the State of New Jersey, and Russell H. Mullen, Assistant Commissioner for Highways, to engage in misconduct in their offices, in violation of N.J.S.A. 2A:85-1 and N.J.S.A. 2A:85-14. Count III charged Sherwin and Loughran with receiving a bribe, in violation of N.J.S.A. 2A:93-6 and N.J.S.A. 2A:85-14. Count IV charged Manzo with giving a bribe of $10,000 to Loughran to be transmitted to the Republican Finance Committee in order to procure the rejection of the lowest bid on a highway reconstruction contract and the giving of preferential treatment to the second lowest bidder, Manzo Contracting Company, Inc., in violation of N.J.S.A. 2A:93-6 and N.J.S.A. 2A:85-14.
All defendants were convicted of the conspiracy charged in the first count. Pursuant to the court's instructions, in the circumstances of a conspiracy conviction, no verdict was returned on the second count. Sherwin and Loughran were convicted of receiving a bribe on the third count and Manzo was convicted of bribery on the fourth count. All of the defendants received State Prison sentences and fines.
*376 The essential facts in the State's case were as follows: In 1970 the State Department of Transportation decided to widen and resurface a portion of Route 46 in Warren County. As the result of invitations to bid and notice to contractors, three bids were submitted. D. Stamato & Co. bid $632,800. Manzo Contracting Co., Inc. submitted a bid of $607,657.50. The lowest bid, $603,871, was submitted by Centrum Construction Company. All of the bidders had previously applied for and been granted a prequalification rating by the Department of Transportation. After the opening of the bids, Centrum was declared the apparent low bidder. It was subsequently declared the actual low bidder on September 28, 1970. A certificate of award was prepared and signed by departmental officials. Final acceptance of Centrum's bid awaited action of the Commissioner of Transportation, John C. Kohl.
On October 8, 1970 Loughran, who had previously visited the Manzo Contracting Co., Inc. offices, visited Sherwin at his office in the State House at Trenton. As a result of the meeting, Sherwin sent a letter by special delivery to Commissioner Kohl's home in which he urged that "the bids be rejected and a rebidding requested." Upon receipt of Sherwin's letter Commissioner Kohl telephoned Assistant Commissioner Mullen but was unable to reach him. He dictated a note for Mullen directing him to "Stop everything on the award of the contracts for Route 46." Kohl subsequently telephoned Sherwin who said it would be a distinct favor to one of the contractors, Manzo Contracting Company, if the bids were rejected because the contractor was "a friend, supporter, contributor to the party."
On October 20 or 21 Assistant Commissioner Mullen had a conversation with Sherwin about the possibility that an asphalt shortage might justify the rejection of bids. During the conversation Sherwin assured Mullen that the Manzo firm could guarantee a supply of asphalt and suggested disqualifying Centrum because of the absence of a guarantee *377 and awarding the bid to Manzo without rejecting all the bids and readvertising. On October 23, 1970 Mullen again called Sherwin and told him that all bids would be rejected and the job readvertised. Sherwin asked whether Centrum's bid could not be rejected and the contract awarded to the Manzo firm. Mullen stated that that could not be done but that "at least Mr. Manzo would get another opportunity to bid." On that same date Loughran called at the Manzo Company offices and picked up a check for $10,000 payable to the Republican State Finance Committee, the drawing of which had been authorized by Manzo through a telephone conversation with the office manager of the Manzo Company. Seeking to allay the concern of John A. Perucci, Sr., and John A. Perucci, Jr., who were associated with Manzo in the construction project as suppliers of asphalt, Manzo told them not to worry, that the bids were being thrown out and that he had to pay $10,000 to the Republican Party for it. On October 29 and 30 press statements announcing the rejection of the bids were released by Commissioner Kohl's office. Subsequently, on advice of the the Deputy Attorney General assigned to the Department of Transportation, Commissioner Kohl reversed his decision to reject the bids and on November 5 the contract was awarded to Centrum.
On appeal defendants have attacked the sufficiency of the evidence supporting the conspiracy charge. They contend that the prosecutor's comments in summation exceeded the bounds of propriety and they all complain that the court failed to give proper instructions to the jury. They also urge that motions for separate trials should have been granted.
Sherwin contends that there was insufficient evidence to convict him of receiving a bribe. Manzo asserts that the State's evidence was insufficient to justify his conviction for bribery; he contends also that the sentence imposed upon him was manifestly excessive. Loughran also attacks the bribery conviction on the ground of insufficiency of evidence and *378 contends that the trial judge committed several errors in the charge to the jury.

The Bribery Conviction of Manzo
We deal first with the bribery conviction of defendant Manzo under N.J.S.A. 2A:93-6. It is contended on behalf of Manzo that there was no evidence that the $10,000 check to the Republican Finance Committee was given to influence any action of the Department of Transportation and that the evidence did not show that preferential treatment was sought for the Manzo company as charged in the indictment.
The statements made by Manzo to John Perucci, Sr. and John Perucci, Jr. (about which more will be said infra in connection with the conspiracy charge) clearly articulated his purpose in making the contribution. The Peruccis were principals in a family-owned corporation known as Warren Limestone Company. They were Manzo's asphalt suppliers and they had agreed to supply asphalt for the Route 46 job. When the Peruccis found out that Manzo had submitted a bid based upon a price of $14 a ton for asphalt instead of $12 as the Peruccis had agreed, they were disturbed. Manzo told John Perucci, Jr. not to worry, the job was going to be thrown out. A few days after that he said that he had to pay $10,000 to the Republican Party to have the job thrown out. After the announcement was made by the Department of Transportation that the bids would be rejected, Manzo told John Perucci, Jr., "I told you it would be thrown out and it cost me ten big ones."
The closeness of the principal events in point of time is also significant. Payment of the $10,000 contribution to Loughran occurred on the same date that the decision to reject all bids was communicated to Sherwin. These facts bolstered Manzo's statements to the Peruccis and tended to generate a belief in their trustworthiness. The requirements of State v. Lucas, 30 N.J. 37 (1959), in this regard were satisfied. The testimony concerning Sherwin's efforts to have *379 Centrum's bid thrown out and the award made to Manzo Contracting Co., together with the testimony relating to the efforts to have all bids rejected, supported the allegations of the indictment relating to the giving of preferential treatment to Manzo Contracting Co. If either effort had succeeded, the net effect would have been preferential to Manzo Contracting Co. We find no merit to the attack on the sufficiency of the evidence.
Manzo contends, additionally, that the sentence imposed upon him, namely, that of one to two years on the first and fourth counts, to run concurrently, and a total fine of $2,000, was excessive. Defendant, a businessman, age 53 at the time of sentence, had never previously been convicted of a crime. His counsel points out that the crimes of which he was convicted did not involve violence and that defendant was known as a contributor to charity.
In stating his reasons for imposing custodial sentences on the defendants, the trial judge said:
* * * It is suggested that this is a novel conviction, a unique situation. That perhaps the system of political contributions is at fault and should be reviewed or that it should stand trial. I feel that the last three items mentioned, i.e., absence of personal gain, novelty, and the system, are of minimal relevance since the hard fact remains that a jury on ample evidence has found bribery and a conspiracy to subvert an important State contract involving substantial State funds. In a word, in my judgment the offenses dictate the sanctions. * * *
We are mindful of the general policy that "sentencing judges should direct the punishments they impose to the goal of reformation." State v. Ward, 57 N.J. 75, 82 (1970). However, here the offenses were of such a character as to undermine the fundamental assumption that the affairs of government should be conducted in an atmosphere free of corrupt influences. "The social interest demands that official action should be free from improper motives of personal advantage." State v. Begyn, 34 N.J. 35, 48 (1961). The sentencing judge was properly permitted to consider factors *380 such as the deterrence of others and the probability that a lesser sentence of a noncustodial nature would unduly depreciate the seriousness of the offenses in the eyes of the public. See American Bar Association, Sentencing Alternatives and Procedures, § 2.5 at 81 (1967). We find no mistaken exercise of discretion. State v. Tyson, 43 N.J. 411, 417 (1964), cert. den. 380 U.S. 987, 85 S.Ct. 1359, 14 L.Ed.2d 279 (1965).

The Conspiracy Conviction
All three defendants were convicted of the charges contained in the first count, namely, that they had conspired to pervert and obstruct the due administration of the laws pertaining to the Department of Transportation. Each of the defendants attacks the sufficiency of the evidence. It is contended that proof of the existence of a conspiracy was not established, that it was error to admit the testimony of Manzo's statement to the Peruccis, and that the court's charge erroneously defined conspiracy.
Our examination of the record indicates that, entirely apart from the testimony of the Peruccis, sufficient evidence was presented from which the jury could find the existence of a conspiracy. Sherwin, who knew Loughran as a fund-raiser for the Republican Party, met with Loughran several times in his State House office to discuss the Route 46 job and the status of Manzo Contracting Co. as a bidder. Sherwin communicated with officials of the Department of Transportation, including the Commissioner, in an effort to favor the Manzo company by having the low bid of Centrum thrown out or, alternatively, by having all the bids thrown out so the Manzo company could bid again. The only connection between Sherwin and Manzo was Loughran. Sherwin had never met Manzo, according to Sherwin's testimony, but it is not necessary that all members of a conspiracy know each other. State v. Carbone, 10 N.J. 329, 338 (1952).
*381 Significantly, Sherwin was able to tell the Department of Transportation officials that Manzo was a friend and contributor; that he would be able to supply the needed materials, could furnish any guarantee required and would rebid at a lower price. Since Loughran had been in touch with both Manzo and Sherwin, an inference is permissible that the information about Manzo was transmitted by Loughran to Sherwin. The fact that the information was transmitted, when taken together with the fact of Loughran's enlistment of Sherwin's help on behalf of Manzo and Loughran's receipt of the $10,000 check, clearly spells out his participation in the conspiracy.
Manzo's participation was adequately demonstrated by his meetings with Loughran, his relaying of information concerning his ability to supply asphalt, his intention to rebid at a lower price and his payment of the $10,000 contribution. The delivery of the $10,000 check from Manzo to Loughran on the very same day Sherwin was informed of the rejection of the bids is a circumstance which the jury was entitled to consider along with Sherwin's assertion to Commissioner Kohl that Manzo was "a friend, supporter, contributor to the party."
Taken together, all of the circumstances permitted the conclusion that a conspiracy existed. State v. General Restoration Co., Inc., 42 N.J. 366, 375 (1964). Proof of the existence of a conspiracy may rest on either direct or circumstantial evidence. State v. Carbone, supra, 10 N.J. at 341. The transfer of money at or about the same time as the happening of an event essential to the purpose of the parties permits the drawing of a reasonable inference that the facts are not coincidental and innocent but are related in the minds of the parties concerned and the product of an illegal agreement. State v. Seaman, 114 N.J. Super. 19, 30 (App. Div. 1971), cert. den. 58 N.J. 594 (1971), cert. den. 404 U.S. 1015, 92 S.Ct. 674, 30 L.Ed.2d 662 (1972).
The statements made by defendant Manzo to the Peruccis to the effect that he had paid $10,000 to the Republican Party to have the bids thrown out were much more than *382 idle gossip or boasts made to strangers, as is argued by Sherwin. John Perucci, Sr. and John Perucci, Jr. were business associates of Manzo upon whom he was dependent for a supply of asphalt for the Route 46 project. The Peruccis were upset that Manzo's bid had been calculated at $14 a ton for asphalt rather than the price of $12 a ton they had agreed upon. The conversations with the Peruccis furthered the objectives of the conspiracy by placating them in order to assure that Manzo would be able to submit a rebid on the project. This conduct on Manzo's part was directly related to the perversion and obstruction of the bidding laws and related to the objectives of procuring preferential treatment for Manzo Contracting Company, Inc., as was alleged in the indictment.
The conspiracy did not end with the payment of the $10,000 contribution, as has been suggested. It may well be that if the Deputy Attorney General assigned to the Department of Transportation had not advised Commissioner Kohl of the illegality and impropriety of rejecting the bids, Manzo Contracting Co., Inc. might have submitted a new lower bid and been declared the low bidder. Sherwin had reassured Commissioner Kohl that Manzo would be able to supply the materials, that he would be able to supply any guarantee needed and that a better price would be submitted on a rebid. The statements made were in furtherance of that plan and were thus admissible. Evidence Rule 63(9)(b). That the objectives of the conspiracy were frustrated does not bar prosecution; it is the illegal agreement which constitutes the gravamen of the offense. State v. LaFera, 35 N.J. 75, 86 (1961).
In State v. Boiardo, 111 N.J. Super. 219, 231 (App. Div. 1970), cert. den. 57 N.J. 130 (1970), cert. den. 401 U.S. 948, 91 S.Ct. 931, 28 L.Ed.2d 231 (1971), statements made by a coconspirator to the effect that there was a "chain of command," that the organization "pays off hits right away, and this is what the chief wants and demands," that "the chief had the power to get all the books together on odds and cut *383 numbers," that independent numbers operators "can't operate without the chief's approval," and that the defendant Boiardo "controls all of New Jersey, part of New York" were admitted on behalf of the State. It was argued that the statements were mere gossip and did not serve to further the objectives of the conspiracy. This court rejected those arguments holding that it was not error to admit the statements We said:
The life blood of a lottery operation is the regular small bettor, and Germano became such a bettor. We think it was inferable by a jury that the statements were made to Germano to instill in him confidence in the lottery operation and its businesslike efficiency so that he would continue to place his bets with the organization. [at 231]
It was likewise inferable in this case that the statements of Manzo to the Peruccis bore an important relationship to the success of the illicit plan. The relationship of the declarant to the persons to whom the statements were made and the circumstances surrounding their utterance distinguish them from the category of idle comment to third persons, as was dealt with in State v. Yedwab, 43 N.J. Super. 367, 373 (App. Div. 1957), cert. den. 23 N.J. 550 (1957).
Sherwin argues that the statements should not have been admitted because there was an insufficient showing that a conspiracy existed. We have already concluded that ample proof of the existence of a conspiracy was presented, even without the Perucci testimony. The requirement of a showing of the likelihood of an illicit association has clearly been met. State v. Seaman, supra, 114 N.J. Super. at 28. And contrary to defendants' argument, Fifth and Sixth Amendment rights were not violated by the introduction of the Peruccis' testimony. State v. Boiardo, supra, 111 N.J. Super. at 233. The Manzo statements were not a confession, as was the situation in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).
Nor do we find error in the denial of defendants' motion for a judgment of acquittal at the end of the State's case *384 and at the end of the entire case, under the standards set forth in State v. Reyes, 50 N.J. 454, 458 (1969).

The Conviction of Sherwin and Loughran for Receiving a Bribe
The third count of the indictment charged, in essence, that Sherwin and Loughran aided and abetted each other in receiving the sum of $10,000 to be transmitted to the Republican Finance Committee as a bribe to procure acts connected with the Department of Transportation, namely, the rejection of the lowest bid of Centrum on the Route 46 project and the giving of preferential treatment to the second lowest bidder, Manzo Contracting Co., in violation of N.J.S.A. 2A:93-6 and N.J.S.A. 2A:85-14.
Loughran contends that the crime of receiving a bribe was not proved by the State. Sherwin contends that he was unaware of the $10,000 contribution by Manzo and that there was consequently no showing of criminal intent so far as he was concerned. Thus, he argues, he could not be convicted of receiving a bribe.
Sherwin testified in his own behalf to the effect that although he knew Loughran and had been in contact with him in connection with Republican Party fund-raising activities, and had discussed the Route 46 project with Loughran at his State House office, Loughran did not tell him he was soliciting a $10,000 campaign contribution from Manzo. The jury was not required to accept defendant's latter assertion, however. The evidence indicates that Sherwin had told Commissioner Kohl that it would be a distinct favor if the bids were rejected because Manzo was "a friend, supporter, contributor to the party."
Additionally, as we have pointed out above, the contribution of $10,000 was made substantially contemporaneously with Sherwin's being informed by the Department of Transportation that the bids were to be thrown out. Sherwin, who testified he had never met Manzo, told Kohl that Manzo had *385 been a good friend of theirs, that he would be able to supply the necessary materials and that he could supply any guarantee. It was permissible for the jury to conclude that Sherwin was not acting out of motives in the best interest of the State, as he had testified, but with a purpose to favor one who could be expected to contribute and who did contribute to the Republican Party.
The necessary corrupt intent is supplied simply by showing that the opportunity was used to perform a public duty as a means of acquiring an unlawful benefit. State v. Begyn, 34 N.J. 35, 48 (1961). Whether the benefit was received personally by defendant is immaterial, see State v. Smagula, 39 N.J. Super. 187 (App. Div. 1956), and it matters not whether Loughran or Sherwin had power themselves to bring about a rejection of the lowest bid. The statute, N.J.S.A. 2A:93-6, does not require that the person receiving the bribe do so "under color of his office," as does the section proscribing statutory extortion. N.J.S.A. 2A:105-1. The offense of receiving a bribe under N.J.S.A. 2A:93-6 is complete upon a showing that defendant received a thing of value as a bribe to procure any act appertaining to any office or department of the government.
We find that the trial judge correctly charged the jury on the law pertaining to aiding and abetting and acting in concert and that the record contains sufficient evidence to justify the verdict of the jury on the third count with regard to both Sherwin and Loughran.

The Severance Issue
Prior to trial defendant Sherwin moved for a severance. He contends that the denial of his motion was error; the other defendants join in the argument. The facts tended to show that the transactions involved were part of a common scheme or plan and that the three defendants participated in the series of transactions constituting the offenses. Defendants and the offenses were properly joined in *386 a single indictment under R. 3:7-6 and R. 3:7-7. We find no mistaken exercise of discretion in declining to sever. State v. Manney, 26 N.J. 362, 368 (1958).

The Wharton Rule
Defendant Loughran contends that the conspiracy of which defendants were charged involved a crime which by its nature must necessarily have been committed by two or more persons. Such a charge, he argues, cannot be maintained under the so-called Wharton Rule. 1 Wharton, Criminal Law and Procedure, § 89 (1957). The argument is misconceived; it is based on the contention that the conspiracy count was "cornered on the offense of bribery." The indictment, in fact, did not allege a conspiracy to commit the offense of bribery; it charged a conspiracy to "pervert and obstruct the due administration of the laws," an offense which is capable of commission by a single individual. Such a charge is not subject to the application of the rule. State v. Seaman, supra, 114 N.J. Super. at 30.

The Prosecutor's Comments on Summation
Defendant Sherwin contends that the comments of the prosecutor during his summation to the jury went beyond the bounds of propriety, thus depriving him of a fair trial. The prosecutor stated several times during his summation that defendant Sherwin lied. He also used the word "downtown" in referring to the attempts by Sherwin to convince officials of the Department of Transportation to reject the bids. The prosecutor also stated that if John Kohl had rejected the bids, he, too, would have been a defendant.
In making the assertion that Sherwin lied and using the word "downtown" the prosecutor was making permissible comment based on the facts in the record. State v. Mayberry, 52 N.J. 413, 437 (1968), cert. den. 393 U.S. 1043 89 S.Ct. 673, 21 L.Ed.2d 593 (1969). There was no substantial *387 prejudice. State v. Bucanis, 26 N.J. 45 (1958), cert. den. 357 U.S. 910, 78 S.Ct. 1157, 2 L.Ed.2d 1160 (1958). His expression of opinion as to the possible consequences of a rejection of the bids by Commissioner Kohl did not interfere with the fair evaluation of the merits of the defense. State v. Hipplewith, 33 N.J. 300, 311 (1960). Moreover, at the very beginning of the charge the trial judge instructed the jury that there was "nothing in the record before you to support this contention; therefore, you may not consider that argument as valid in your determinations." None of the comments complained of had the capacity of misleading the jury and bringing about an unjust result. State v. DiPaglia, 64 N.J. 288 (1974).

The Charge to the Jury
With respect to the court's charge, defendant Sherwin alleges several errors. He contends that the conspiracy alleged in the indictment was not sufficiently defined, was not related to the facts, and that the court erred in defining the elements of receiving a bribe as charged in the third count.
The court instructed the jury on the subject of conspiracy in well recognized terms as being "a combination or an agreement by two or more persons to accomplish a criminal or unlawful act or to do a lawful act by unlawful means." He explained various relevant facets of the law of conspiracy and the State's burden of proof on each of the elements of the crime. The factual contentions of the State with relation to the conspiracy charge were stated to be "that between September 24, 1970 and November 5, 1970, the three defendants, Sherwin, Loughran and Manzo conspired with one another illegally and corruptly to a criminal end. The criminal end being to pervert the statutes and procedures on public bidding with the idea to reject all bids and give preferential treatment to Mr. Manzo." Later in the charge the judge elaborated and added that the reasons alleged for procuring preferential treatment were "for reasons of personal favoritism *388 and as compensation for political contribution." He also referred to the eight overt acts alleged in the indictment. In a supplemental charge after hearing defense counsel's objections, the judge clarified the term "political contribution" as follows:
When I spoke of political contribution, of course, I was referring to the $10,000 check given to the Republican Finance Committee. I didn't spell it out, but I think you knew what I was talking about.
The judge also summarized the testimony of each witness during the course of his charge. The matter was not left in a state where the jury would have to speculate as to the applicability of the law to the facts. Cf. State v. Hobbs, 90 N.J. Super. 146 (App. Div. 1966). Nor was the jury left without appropriate instructions as to the nature of the crime charged, as was the case in State v. Green, 62 N.J. 547, 561 (1973).
Defendant Sherwin submitted numerous requests to charge. He complains now that refusal of the judge to charge certain of them was error. Defendant requested an instruction that
* * * the fact that the Secretary of State communicated with the Commissioner of Transportation and the Assistant Commissioner of Transportation, standing on its own, raises no inference of improper activity. In fact, under the facts, you may find that he had a duty to disclose such information.
The requested charge would not have properly framed the issues presented by the indictment and the proofs. The indictment charged and the proofs tended to show that defendants "acted for reasons of personal favoritism and as compensation for political contributions." Nowhere in the charge was it implied that mere communication constituted improper or unlawful conduct.
Defendant Sherwin also requested an instruction that
If a person has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, he does not thereby become a conspirator.
*389 The judge refused to give the instruction in the language presented. But the use of words such as mutual understanding, knowingly, willfully, corruptly and intentionally sufficiently indicated to the jury that the State was required to prove that each of the defendants knew of the conspiracy.
Defendant Sherwin contends further that the trial court erred in failing to charge that he was entitled to separate consideration on the part of the jury. The argument is without merit. The judge did instruct the jury in clear and definite terms that each of the charges "must be considered separately and distinctly," that "the burden is on the State to prove each of the essential elements of the offenses charged, beyond a reasonable doubt before any defendant would be guilty of any offense." The judge further charged the jury that if they found:
* * * a reasonable doubt as to the defendants' guilt on any of the particular charges, it is your duty to acquit, to find him innocent. If on any of the particular charges as outlined you are satisfied beyond a reasonable doubt as to the guilt of the defendants or any one or two defendants, then it is your obligation to convict the defendant or those defendants, to find him guilty.
The jury was told that if they had a reasonable doubt "even though that doubt may arise merely from his good reputation, he is entitled to an acquittal," but that if they "believe the defendant or defendants guilty beyond a reasonable doubt, he or they should be convicted." (Emphasis supplied throughout)
Finally, to eliminate any question that the jury might be tempted to decide the guilt of the defendants collectively, the trial judge prepared and used a verdict sheet in which the offenses charged were listed separately as were the defendants. The jury was then instructed to record its findings as to each defendant and each charge separately on the verdict sheet.
Defendant Sherwin requested the judge to charge, "If you can reconcile the evidence on any reasonable hypothesis *390 consistent with a defendant's innocence, then you must acquit." The request was not in accord with the existing law of this State. It has long been held that a jury need not find that the evidence excludes every reasonable hypothesis of innocence. See: State v. Billingsley, 46 N.J. 219, 237 (1966), and the cases cited therein; State v. Mayberry, supra.
The next contention urged by defendant Sherwin is that the judge refused to charge in terms of "an abiding conviction * * * to a moral certainty" when instructing the jury on reasonable doubt. The requested language has not been in general use for several years; its omission is not error. State v. Lane, 52 N.J. 123, 126 (1968). As in Lane, the trial judge correctly defined reasonable doubt as "an honest and reasonable uncertainty." A rather extensive explanation of the term was given in the following language:
A reasonable doubt is a doubt based on reason, which arises out of the evidence or lack of evidence in this case. It is not a doubt based on guess work or speculation. It is not a mere possible or imaginary doubt, because, as you may very well know, everything relating to human affairs or depending upon oral evidence is open to some possible or imaginary doubt. The law does not require absolute certainty. A reasonable doubt is an honest and reasonable uncertainty as to the guilt of the defendants existing in your minds after you have given full and impartial consideration to all of the credible testimony or evidence. Because there is more to evidence than just testimony. It may arise from the evidence itself or from a lack of evidence, but it may not arise solely from sympathy or speculation. It, reasonable doubt, is a doubt which a reasonable person has after carefully weighing all of the testimony or evidence. Once again, the State has the burden of proving the defendants' guilt of the crime charged and each of their various elements, beyond a reasonable doubt.
An objection was made to the statement, "the law does not require absolute certainty." We find no error in the use of the language quoted. Donnelly v. State, 26 N.J.L. 601, 614 (E. & A. 1857); State v. Shapiro, 122 N.J. Super. 409, 426 (Law Div. 1973).
The judgments of conviction are affirmed.