NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3118-20

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

JASON M. O'DONNELL,

    Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

April 4, 2022

APPELLATE DIVISION

Argued March 21, 2022 – Decided April 4, 2022

Before Judges Fisher, DeAlmeida and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 21-02-0011.

Angela Cai, Deputy State Solicitor, argued the cause for appellant (Matthew J. Platkin, Acting Attorney General, attorney; Jeremy Feigenbaum, State Solicitor, Angela Cai, and Jennifer E. Kmieciak, Deputy Attorney General, of counsel and on the briefs).

Leo J. Hurley, Jr. argued the cause for respondent (Connell Foley LLP, attorneys; Leo J. Hurley, Jr., of counsel and on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

N.J.S.A. 2C:27-2 imposes criminal liability on "person[s]" who offer or accept from another "[a]ny benefit as consideration" for, among many things, the performance of official duties. A grand jury charged defendant Jason M. O'Donnell with a violation of N.J.S.A. 2C:27-2 based on evidence that, during his 2018 campaign for the office of Bayonne Mayor, he agreed to accept from an attorney $10,000 in "street money" in exchange for becoming Bayonne's tax attorney once defendant was elected. Defendant wasn't elected.

Because he never took office and was never able to perform his part of this alleged corrupt bargain, defendant moved for a dismissal of the indictment, claiming N.J.S.A. 2C:27-2 does not criminalize an unsuccessful candidate's acceptance of a bribe. In granting the motion, the trial judge agreed with defendant's interpretation largely because that is how the statute was interpreted in United States v. Manzo, 851 F. Supp. 2d 797 (D.N.J. 2012). In rejecting both the trial judge's decision and the Manzo decision, we conclude N.J.S.A. 2C:27-2's plain language reveals an intent to render unlawful what defendant is alleged to have done and that the statute imposes criminal liability on bribe-accepting but unsuccessful candidates for public office.

The statute's text suggests a broad application. It first lists what constitutes an unlawful bargain by declaring that bribery occurs when a "person . . . directly

or indirectly offers, confers or agrees to confer upon another, or solicits, accepts or agrees to accept [a benefit] from another." It then delineates in broad terms the types of benefits included, such as those offered or accepted for:

> a. . . . a decision, opinion, recommendation, vote or exercise of discretion of a public servant, party official or voter on any public issue or in any public election; or
>
> b. . . . a decision, vote, recommendation or exercise of official discretion in a judicial or administrative proceeding; or
>
> c. . . . a violation of an official duty of a public servant or party official; or
>
> d. . . . the performance of official duties.
>
> [N.J.S.A. 2C:27-2].

Subsection (a) criminalizes the purchasing of the votes of public servants, party officials and voters on "any" public issue or in "any" public election. Subsection (b) criminalizes the same conduct when its purpose is to obtain a ruling in a judicial or administrative proceeding. Subsection (c) applies when the unlawful agreement seeks a public servant's or public official's violation of an official duty. And subsection (d) criminalizes the offering or accepting of a benefit in exchange "for the performance of official duties."

A-3118-20

To be sure, some of these categories are limited by their expressed terms. For example, subsections (a) and (c) refer to agreements that seek action or inaction by a "public servant" or a "party official." A "public servant" is defined as "any officer or employee of government, including legislators and judges, and any person participating as juror, advisor, consultant or otherwise, in performing a governmental function, but the term does not include witnesses." N.J.S.A. 2C:27-1(g). Who may be a "party official" is broadly defined in N.J.S.A. 2C:27-1(e).

But other words and phrases undoubtedly reveal the Legislature's intent that there be no artificial or implicit exceptions from the statute's reach. The word "any," which appears in numerous instances, evinces an intent to include all persons or agreements not specifically identified. And the statute's imposition of criminal liability on "person[s]" – "[a] person is guilty of bribery if . . .," N.J.S.A. 2C:27-2 – demonstrates a legislative intent that no individual or entity is exempt from its reach. See N.J.S.A. 1:1-2.[1]

---

[1] Defining "person" as including "corporations, companies, associations, societies, firms, partnerships and joint stock companies as well as individuals, unless restricted by the context to an individual as distinguished from a corporate entity . . . ."

Having expansively expressed the statute's parameters, the Legislature included additional provisions to further amplify the statute's intended broad reach. The Legislature did this by negating claims or defenses that might be anticipated when a person accepts or agrees to accept a bribe even though not then capable of fulfilling the purchased promise:

> It is no defense to prosecution under this section that a person whom the actor sought to influence was not qualified to act in the desired way whether because he had not yet assumed office, or lacked jurisdiction, or for any other reason.
>
> [N.J.S.A. 2C:27-2.]

The obvious import of this paragraph (hereafter the "no-defense provision") is to explain that it behooves neither party to the corrupt bargain that the person to be influenced "was not qualified to act in the desired way," just as here defendant was not qualified to appoint the bribe giver as Bayonne's tax attorney because defendant never attained the position that would allow him to fulfill the alleged promise.

All these elements and declarations about what constitutes a bribe and who may be held criminally liable for offering or accepting a bribe find their genesis in the common law crime of bribery. More than 150 years ago, this State's former Supreme Court recognized that some even older authorities

recognized that the common law crime of bribery could "only be predicated [on] a reward given to a judge or other official concerned in the administration of justice." State v. Ellis, 33 N.J.L. 102, 103 (Sup. Ct. 1868). The court, however, determined that the better rule was a broader rule proposed by authorities that defined bribery as "the taking or giving of a reward for offices of a public nature," and concluded that "[n]either upon principle nor authority can the crime of bribery be confined to acts done to corrupt officers concerned in the administration of justice." The court explained that limiting bribery to judicial corruption would result in, for example, "votes of members of council on all questions coming before them, could be bought and sold like merchandise in the market." Id. at 103-04. The court emphatically declared "[t]he law is otherwise." Id. at 104.

Ellis considered and rejected the argument that there is no offense if the bribe is offered or accepted by a public official who lacked jurisdiction to do that for which he was paid. Again, the court was clear in stating that the offense is "complete when an offer of reward is made to influence the vote or action of the official" and it "need not be averred, that the vote, if procured, would have produced the desired result, nor that the official, or the body of which he was a

member, had authority by law to do the thing sought to be accomplished." Id. at 105.

Rarely does one encounter a more apt opportunity to invoke Justice Holmes's aphorism that "a page of history is worth a volume of logic." New York Trust Co. v. Eisner, 256 U.S. 345, 349 (1921). Ellis's limning of the common law offense of bribery is clearly reflected in every provision of N.J.S.A. 2C:27-2. Ellis held that the offense envelops and imposes criminal liability on both the offeror and offeree, the crime is completed when the agreement is reached, the public nature of the corrupt deal is not limited to narrow areas of public interest such as judicial administration, and it doesn't matter that the bribed individual was without jurisdiction or otherwise incapable of performing his part of the bargain. The "gist" of the offense, the Ellis court held, is "the tendency of the bribe to pervert justice in any of the governmental departments, executive, legislative, or judicial." Id. at 105. So, what's past is prologue; the meaning and scope of N.J.S.A. 2C:27-2 cannot be fully appreciated without acknowledging the voice of our predecessors in declaring the traditionally wide scope and reach of the crime of bribery.

As we have already observed – by merely quoting its words and phrases – N.J.S.A. 2C:27-2 casts a wide net. Despite that, defendant seeks to avoid the

consequences of his alleged corrupt agreement by asserting the statute "does not, on its face, apply to unelected political candidates." He first claims that the plain text of the statute supports this view by alluding to the references in subsections (a) through (d) to "public servant," "party official," "judicial or administrative proceeding[s]," and "official duties," and by pointing out the absence of any reference to candidates for office. Our response to this textual argument is to repeat what we said in State v. Ferro, 128 N.J. Super. 353, 359 (App. Div. 1974): if the Legislature intended to criminalize the acceptance of bribes only by public officials and public servants it would have directed its prohibition at public officials and public servants rather than using the broader word "persons." See also N.J.S.A. 1:1-2.

We also soundly rejected a similar argument twenty-five years ago in State v. Schenkolewski, 301 N.J. Super. 115, 138 (App. Div. 1997), when, in speaking for this court, Judge (later Justice) Wallace held that under N.J.S.A. 2C:27-2 "neither the offeror nor the recipient of the bribe need be a public official to prove bribery."[2] Instead, we recognized it was "sufficient if the recipient created the understanding with the briber that he could influence

_____

[2] In Schenkolewski, the defendant held a governmental position but was not a member of the township committee whose approval was the object of the bribe. We held it did not matter. 301 N.J. Super. at 138-39.

matters in connection with an official duty, whether or not he was capable of actually effecting such an act." In other words, as held in State v. Sherwin, 127 N.J. Super. 370, 385 (App. Div. 1974), even though written about an earlier but equally comprehensive version of our bribery laws, the offense of bribery does not have as an element that the accused received the bribe "under color of his office." Again, the Legislature imposed criminal liability on "person[s]," not just public officials and public servants who offer or accept bribes.

Defendant also argues that the Legislature's delineation of the types of unlawful agreements in subsections (a) through (d) reveals that an agreement between a citizen and a candidate for office is not encompassed by N.J.S.A. 2C:27-2. As we understand the argument, defendant contends that in receiving or being offered a benefit a candidate is not in a position to make "a decision, opinion, recommendation, vote or exercise of discretion of a public servant," N.J.S.A. 2C:27-2(a), or "perform[] . . . official duties," N.J.S.A. 2C:27-2(d). We reject this myopic view of the statute because there is nothing about this language that would suggest a requirement that the bribe receiver have the ability – at the time of the crime – to perform his end of the deal.

Our obligation in ascertaining a statute's reach is to "discern and effectuate" the legislative intent. Murray v. Plainfield Rescue Squad, 210 N.J.

581, 592 (2012). The "best indicator of that intent is the statutory language," which must be given its "ordinary meaning and significance." DiProspero v. Penn, 183 N.J. 477, 492 (2005). The interpretive process is not an invitation to find and employ loopholes or exceptions not plainly expressed, nor an opportunity to engraft elements or considerations not plainly revealed in or fairly implicated by the words used. The opportunity to engage in "judicial surgery" is ordinarily limited to avoiding a constitutional infirmity in a legislative enactment. See State v. Natale, 184 N.J. 458, 485-86 (2005); Plastic Surgery Ctr., PA v. Malouf Chevrolet-Cadillac, Inc., 457 N.J. Super. 565, 575 (App. Div. 2019), aff'd o.b., 241 N.J. 112 (2012).

Notwithstanding those limitations, defendant would have us implant into N.J.S.A. 2C:27-2 an element that the bribe receiver possess the present ability or give the impression to the bribe offeror that he was able to perform his part of the bargain. This interpretation also animated the trial judge's decision in that the judge granted the motion to dismiss because, in her view, defendant "was incapable of performing his promised official duties at the moment of exchange" (emphasis added). There is nothing in the statute to suggest the State is required to prove a bribe receiver's present ability to perform. In fact, another portion of the statute clearly expresses a contrary intent, declaring that it is no defense that

the bribe receiver "was not qualified to act in the desired way whether because he had not yet assumed office, or lacked jurisdiction, or for any other reason." The parties dispute whether this no-defense provision applies here, and we will turn to that momentarily, but its existence clearly reveals the legislative intent that it is unnecessary that the bribe receiver have the present ability to perform when the bribe occurs – or ever – to constitute a violation of N.J.S.A. 2C:27-2.

And we find nothing in the statute that would somehow exempt candidates for office from its reach. In fact, we already held that candidates for office are subject to the bribery statute, State v. Woodward, 298 N.J. Super. 390, 392 (App. Div. 1997),[3] and find further support for that conclusion in that N.J.S.A. 2C:27-2 is derived from the Model Penal Code,[4] which was intended to criminalize a

---

[3] Woodward involved an agreement between two candidates for the same office that one would withdraw in exchange for money and the promise of a job in the other's administration. Id. at 392. See also State v. Lake, 408 N.J. Super. 313 (App. Div. 2009). Despite our clear holding in Woodward that a candidate for office may be convicted under N.J.S.A. 2C:27-2, the trial judge found our holding inapplicable or distinguishable because the defendant there was the incumbent. That is a distinction without a difference. Indeed, the logical extension of the trial judge's view is that while Woodward might violate N.J.S.A. 2C:27-2 by offering the corrupt bargain, his opponent would not violate the statute if he had made the offer.

[4] See State v. Robinson, 217 N.J. 594, 606 (2014) (holding that "[w]hen a provision of [our criminal code] is modeled after the MPC [Model Penal Code],

candidate's receipt of a payment in exchange for a promise to perform some future official act. Model Penal Code & Commentaries, § 240.1 cmt. 5(b) at 27. To accept defendant's argument – without some clear legislative expression to support it – would be to declare open season on the bribing of candidates for public office. Defendant's interpretation that candidates are not made criminally liable for accepting bribes in the performance of some future official act would mean, if correct, that a candidate could be bribed before, during, and after being elected, right up until taking the oath of office.[5] If the Legislature had intended to except such corrupt individuals from the scope of N.J.S.A. 2C:27-2 it could have, but did not, say so.

Defendant's argument would also, if accepted, create an unusual subset of candidates who would be criminally liable while excusing others, because the

_____

it is appropriate to consider the MPC and any commentary to interpret the intent of the statutory language").

[5] The absurdity of defendant's position is revealed by the consequences it would hold in the following example. Assume an individual, seeking to become a city's tax attorney, approached both the incumbent and his adversary in an election for the office of mayor and paid both to agree to appoint him on taking office. Despite committing the same reprehensible act, only the incumbent, who possessed the present ability to make the appointment, would violate N.J.S.A. 2C:27-2, while the other candidate – whether he wins or loses the election – would not. There is absolutely no evidence or language in the current statute that would support such an illogical result.

argument suggests that a candidate who is already a public servant or public official could be held criminally liable but not a candidate who holds no public office at the time. For example, if defendant was a public servant of any sort, even a position having no relation to the campaign in question or the bribe offered or received, like the defendant in Schenkolewski, defendant's interpretation would place him within N.J.S.A. 2C:27-2's reach. The argument suggests that is only the happenstance that defendant held no other public office or position that kept him out of the statute's reach. Considering the statute – by its very language – allows no such exception, and since we have already held a candidate for office is subject to N.J.S.A. 2C:27-2 without qualifying it in the way defendant argues, see Woodward, 298 N.J. Super. at 392, we decline the invitation to interpret the statute to reach the nonsensical conclusion, see N.J. Repub. State Comm. v. Murphy, 243 N.J. 574, 592 (2020) (holding that statutes must be interpreted to avoid "absurd results"); State v. Provenzano, 34 N.J. 318, 322 (1961) (recognizing that statutes cannot "be construed to lead to absurd results" and that "[a]ll rules of construction are subordinate to that obvious proposition"), that the Legislature intended to create a subset of candidates who are entitled to accept bribes with impunity.

To further support his argument that he is unanswerable for his alleged corrupt agreement, defendant refers to the no-defense provision of N.J.S.A. 2C:27-2 quoted earlier. This provision reinforces our understanding that defendant may be found criminally liable for the conduct alleged since it forecloses the arguments that defendant was not a public servant or public official when he allegedly accepted a bribe or that the law requires that he have the ability at the moment of the alleged bribe to fulfill his part of the bargain by declaring arguments like this are "no defense" to a bribery prosecution.

To view the no-defense provision as supportive of defendant's position requires a distortion of what the Legislature clearly stated. Besides the trial judge's decision here, this mangled view actually finds support in a reported decision of one federal district judge, who interpreted this provision in a way favorable to a bribed-but-unsuccessful candidate for office. See Manzo, 851 F. Supp. 2d at 812. We can explain why the no-defense provision is unavailing to defendant by explaining why Manzo is erroneous.

In that case, Manzo was charged with violating the Travel Act, 18 U.S.C. § 1952, which required proof that Manzo had engaged in interstate commerce to promote unlawful conduct, which was an alleged violation of N.J.S.A. 2C:27-2 that occurred while Manzo was unsuccessfully running to become mayor of

Jersey City. Id. at 799. In considering the scope of the no-defense provision, the

district judge explained that it was clear to him

> that the language addresses two distinct parties: the
> person whom the actor sought to influence, and the
> actor himself. The "actor" is presumably the individual
> prosecuted under the statute – in this case, Defendant
> Louis Manzo – and substituting the named Defendant
> with the term "actor" in the provision indicates that the
> provision was intended to exclude any "not qualified to
> act" defenses as made by bribe givers, rather than bribe
> receivers.
>
> [Id. at 812 (emphasis in the original).]

In other words, the judge viewed the no-defense provision as describing the

defenses that are not available – which is accurate – but the judge then also

viewed the provision as depriving only the bribe giver of the potential defense.

The logic of this escapes us. The Manzo decision interprets the no-defense

provision as if the words and phrases we have emphasized below were included:

> It is no defense to prosecution of a bribe offeror or giver
> under this section that a person whom the actor sought
> to influence was not qualified to act . . . .

If the Legislature intended to qualify the reach of this provision, it certainly

knew how to express that thought. Indeed, an example of how to limit a similar

provision's reach is expressed in the statute's very next paragraph, which begins

"In any prosecution under this section of an actor . . ." (emphasis added).

Because it failed to qualify the "prosecution" referred to in the opening phrases of the no-defense provision, we must assume the Legislature intended that the provision would apply to all prosecutions and that it would deprive both bribe givers and bribe receivers of the argument that the bribe receiver lacked, for any reason – including the failure to get elected – the ability to fulfill his part of the bargain.

This conclusion not only flows from the Legislature's expression but by the way our courts have always looked at bribery, recognizing as long ago as Ellis that it is no defense to anyone charged with bribery that the bribe receiver was incapable of performing his part of the bargain. 33 N.J.L. at 105 (recognizing that the defendant committed bribery even though the bribe was paid to a member of the Jersey City council for an easement over city street that the council had no authority to grant). Bribery has traditionally been a reciprocal crime; the bribe giver is as culpable as the bribe taker. As it was in the common law, see State v. Begyn, 34 N.J. 35, 48 (1961), this reciprocity concept became a principal theme of N.J.S.A. 2C:27-2. The New Jersey Criminal Law Revision Commission recognized that "[t]he offense is reciprocal: whenever it is a crime to receive a bribe it is a crime to tender one." See 2 Final Report of N.J. Criminal Law Revision Commission, cmt. to § 27-2 at 263 (1971). Even defendant does

not argue otherwise. It therefore runs counter to everything our courts have ever said about bribery to conclude that somehow the Legislature wanted to treat bribe receivers better than bribe givers in this or any other instance.

Indeed, the provision expresses the very thing that defendant argues is excluded. It not only renders irrelevant the fact that the bribe receiver was incapable of fulfilling his end of the deal, but also that the bribe receiver had not assumed the office needed to complete the deal, just like a candidate who does not get elected. To be sure, the no-defense provision states that it is irrelevant that the bribe receiver "had not yet assumed office" (emphasis added), but the provision's remainder, which incorporates the bribe receiver's inability to fulfill his promise because he "lacked jurisdiction, or for any other reason" (emphasis added), more than amply covers all those instances – such as a candidate's failure to get elected, as here. There is nothing about this broad language to suggest that somewhere in the provision's interstices lurked a legislative intent to give candidates for office carte blanche to accept bribes without consequence up until the moment they take office or if they never take office.

Instead, everything about N.J.S.A. 2C:27-2 suggests a legislative intent to criminalize in equal fashion both the giving and taking of bribes in all official and political matters. There are no expressed exemptions. Despite our prior

holdings, which we have cited, that clearly expressed this, we are obligated to again examine N.J.S.A. 2C:27-2 only because the trial judge found, like the judge in Manzo, that somewhere in the statute a contrary intent could be found between the lines when it comes to candidates who don't get elected. As we have explained, there is no spoken or unspoken intention that would support defendant's theory or Manzo's conclusion. To eradicate corruption in public matters, the Legislature spoke only in broad and general terms that clearly envelop what defendant has been accused of. The four bribery areas described in subsections (a) through (d) are stated in the broadest of terms. And the no-defense provision, which expresses the irrelevance of the bribe receiver's inability to perform his part of the bargain, is equally as broad, declaring that it is no defense that the bribe receiver "was not qualified to act in the desired way whether because he had not yet assumed office, or lacked jurisdiction, or for any other reason." N.J.S.A. 2C:27-2 (emphasis added). Other than torturing the statutory language to suit his position, defendant offers nothing other than Manzo's erroneous interpretation, mistakenly followed by the trial judge here,[6] that only bribe givers are subject to the no-defense provision.

---

[6] The decisions of our federal colleagues are entitled to respect, Teeters v. N.J. Div. of Youth & Fam. Servs., 387 N.J. Super. 423, 429 (App. Div. 2006), but

Defendant alternatively argues that the rule of lenity requires dismissal of the indictment. Not so. The rule of lenity vindicates an aspect of due process that "[n]o one shall be punished for a crime unless both that crime and its punishment are clearly set forth in positive law." In re De Marco, 83 N.J. 25, 36 (1980). As a general matter, the rule's application requires a determination that the statute charged is ambiguous and its ambiguity should be resolved in the defendant's favor. State v. Regis, 208 N.J. 439, 451-52 (2011). Because we find no statutory ambiguity, the rule of lenity has no application. But, even if we were to assume an ambiguity exists within N.J.S.A. 2C:27-2, the rule doesn't provide a defendant with a get out of jail free card. As Chief Justice Wilentz said in De Marco, "[i]t does not invariably follow . . . that every time someone can create an argument as to the meaning of a penal sanction" the rule of lenity should excuse the conduct. 83 N.J. at 36. And it does no good for defendant to assert that the statute is ambiguous because Manzo held that what he allegedly did was not a crime. In Regis, the Court observed that the rule of lenity is not available "simply because there are competing judicial interpretations of the statutory language, in New Jersey or elsewhere." 208 N.J. at 452. To support a

their views are not binding in matters of New Jersey law, Alderiso v. Med. Ctr. of Ocean Cnty., 167 N.J. 191, 201 (2001).

lenity argument based on competing judicial interpretations, defendant can only offer the trial court decision in Manzo whereas our binding decisions in Schenkolewski, Ferro, and Woodward all would have, if consulted, counseled a candidate for office in 2018 of the criminal jeopardy he was facing on accepting a bribe. Although forcefully argued, we cannot take seriously the contention that defendant acted under the assumption that he was not accepting a bribe within the meaning of N.J.S.A. 2C:27-2, if what he is accused of is ultimately proven.

We lastly observe that the Legislature just passed a bill which, if signed into law by the Governor, will both expand N.J.S.A. 2C:27-2's definition of "public servant" to include candidates for public office and rephrase the scope of the no-defense provision. See A. 2472 (passed by the Legislature on March 24, 2022). The commentary offered in support of the bill states, among other things, that these amendments to N.J.S.A. 2C:27-2 are "intended to respond" to Manzo by "ensur[ing] that such future incidents involving persons seeking public or political office are punishable as criminal acts."

This bill has no bearing on our decision. It reveals only the Legislature's desire to avoid future decisions like Manzo. This bill is neither an admission that N.J.S.A. 2C:27-2 is inadequate or ambiguous when applied to candidates for public office nor is it evidence of the legislative intent when N.J.S.A. 2C:27-

2 was enacted decades ago. In the same vein, we find no significance in the fact that there were prior failed attempts to modify N.J.S.A. 2C:27-2 in the wake of Manzo. See Amerada Hess Corp. v. Dir., Div. of Taxation, 107 N.J. 307, 322 (1987) (quoting 2A Sutherland Statutory Construction § 49.10 (4th ed. 1984), in observing that "[l]egislative inaction is 'a weak reed upon which to lean' . . . in construing a statute").

The order dismissing the indictment is reversed and the matter remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3118-20